**James Calvin MITCHELL,
Plaintiff–Appellee,**

v.

**Nathan A. RICE; Bobby R. Watson;
Bob Seymore, Defendants–
Appellants,**

**and**

**James Martin, Governor; J. Dwight Sanderford; Gene T. Cousin, in their individual and official capacities, Defendants.**

**No. 90–6040.**

United States Court of Appeals,
Fourth Circuit.

Argued Oct. 2, 1991.

Decided Jan. 10, 1992.

---

Sylvia Hargett Thibaut, Asst. Atty. Gen., Raleigh, N.C., argued (Lacy H. Thornburg, Atty. Gen., on brief), for defendants-appellants.

Robert J. King, III, Brooks, Pierce, McLendon, Humphrey & Leonard, Greensboro, N.C., argued (Mack Sperling, on brief), for plaintiff-appellee.

Before RUSSELL, HALL and PHILLIPS, Circuit Judges.

OPINION

PER CURIAM:

This case returns to us after two prior appeals. The present appeal challenges the district court's dismissal of Appellants' summary judgment motion. Appellants, North Carolina prison officials, were defendants below in a section 1983 prisoner complaint charging that deprivation of out-of-cell exercise opportunities for extended periods of time violated the Eighth Amendment prohibition against cruel and unusual punishment [836 F.2d 546 (table)]. State officials filed a motion for summary judgment asserting the defense of qualified immunity. The United States District Court for the Eastern District of North Carolina, Raleigh Division, denied the motion, finding, *inter alia*, that abundant authority existed to place Defendants on notice that deprivation of out-of-cell exercise was unconstitutional. We affirm and remand the case to the district court for further fact finding.

I.

In December 1973, James Calvin Mitchell began serving a thirty-year sentence for second degree murder and a consecutive five- to ten-year sentence for armed robbery. He was incarcerated at Central Prison in Raleigh, North Carolina.

While incarcerated, Mitchell was charged with and convicted of various crimes committed inside prison. On April 23, 1975, Mitchell was convicted of assault with a deadly weapon with intent to kill resulting in serious injury, for which he received a three-year concurrent sentence. On November 10, 1975, Mitchell was convicted of attempted escape from prison, for which he received a four-month concurrent sentence. Five years later, on October 14, 1980, Mitchell was convicted of another assault with a deadly weapon inflicting serious injury and received a twelve-month concurrent sentence. On July 11, 1983, Mitchell was again convicted, this time on two counts of assault with a deadly weapon with intent to kill, inflicting serious injury, for which he received two consecutive sentences of ten and twenty years. Addition-

ally, from 1973 to 1986 Mitchell incurred over seventy prison rule infractions, some of which were violent in nature.

At the time of Mitchell's July 1983 assaults, he had already been placed in maximum custody assigned to intensive management, the most restrictive custody level in the North Carolina Prison system. State regulations permit intensive management assignments in order to "isolate inmates that pose an imminent threat to the life or health of other inmates or the staff of the unit or institution involved." 5 N.C.Admin.Code tit. 5, r. 2C.0401 (Dec. 1984). The regulations authorize further restrictions of outside cell activities "where an inmate has seriously assaulted or threatened to assault staff or other inmates if allowed outside the cell...." r. 2C.0300(d)1. Further restrictions specifically approved in the regulations include security restraints (handcuffs and/or leg cuffs) for out-of-cell activities, curtailment of law library privileges, and "additional restrictions" on outside cell exercise activities. *Id.*

As a result of Mitchell's July 11, 1983, assaults, prison officials ordered Mitchell shackled in full restraints (hand and leg cuffs) any time he was outside his cell. Despite these physical restraints, Mitchell's menacing behavior persisted. On July 24, 1983, while outside his cell in full restraints, Mitchell attacked the window of a Control Station room with a broom handle. This episode led Bobby R. Watson, Associate Warden for Operations at Central Prison, to recommend that Mitchell be restricted to his cell except for showers twice weekly, and then in full restraints. After notice to Mitchell and a hearing, the Director's Review Committee approved the same on July 28, 1983, and ordered subsequent review every thirty days. In accordance with regulations, prison officials pro-

vided Mitchell with an exercise manual demonstrating in-cell exercises.

On February 29, 1984, seven months after the imposition of full out-of-cell restrictions, the Director's Review Committee returned Mitchell to limited restrictions. He was then able to leave his cell for regular exercise, however, still in full restraints. During the prior seven-month period, Mitchell had been largely confined to his cell, except for semi-weekly showers.

One year after full restrictions were relaxed, Mitchell's assaultive behavior resumed. On February 26, 1985, Mitchell, in full restraints, again attacked the Control Station window with a mop wringer after refusing to return to his cell. As a result, full out-of-cell restrictions were again imposed by the Director's Classification Committee (formerly the Director's Review Committee) on April 3, 1985.

On March 14, 1986, after eleven months under full restrictions, the Classifications Committee lifted the restrictions and transferred Mitchell to Caledonia Correctional Institution. In total, Mitchell had been subjected to out-of-cell arm and leg restraints for a period of two years and eight months. For eighteen of those months he was ordered confined to a sixty-seven square foot cell[1] without any regular opportunity to exercise outside his cell or any regular exposure to different surroundings, fresh air or sunshine.

Mitchell did not file any grievances concerning his health or medical problems during the two periods of full restriction. Furthermore, his medical records do not reveal any injuries directly related to his confinement during these periods.

On March 3, 1986, Mitchell filed a pro se complaint charging Governor James Martin and various prison officials under 42 U.S.C. § 1983 with numerous Eighth Amendment violations.[2] The district court granted de-

1. We presume part of this space was taken up by a bed, toilet and sink, leaving Mitchell somewhat less than the 67 square feet for movement and in-cell exercise.

2. Mitchell sought both injunctive relief and damages. Even though he was out of restricted confinement and at a different prison facility at

the time of filing this suit, he based his claim for injunctive relief on the likelihood of such confinement being reinstated.

Governor James Martin was dismissed as a party to this suit by order of the district court dated August 12, 1987. Mitchell seeks injunctive relief against the remaining defendants in their official capacities in accordance with *Will*

fendant's motion to dismiss and for summary judgment upon recommendation from the United States Magistrate.

On appeal, we affirmed the district court's dismissal in all respects except one. The surviving issue, Mitchell's claim that deprivation of out-of-cell exercise for extended periods of time violated the Eighth Amendment, was vacated and remanded for further review. Prison officials then filed a petition for rehearing, which we granted. On rehearing, we remanded the exercise issue "for development of additional facts ..., particularly whether the plaintiff offered any proof of injury, with an opportunity to both parties to present any additional evidence they may desire." *Mitchell v. Martin*, No. 87–6592, slip op. at 2–3 (Jan. 12, 1989) [867 F.2d 609 (table)].

Prison officials filed another motion for summary judgment in the district court, asserting a defense of qualified immunity. The district court denied the motion and prison officials now appeal.

## II.

We have jurisdiction in this case under 28 U.S.C. § 1291 (1988). The Supreme Court held in *Mitchell v. Forsyth*, 472 U.S. 511, 530, 105 S.Ct. 2806, 2817, 86 L.Ed.2d 411 (1985), that denial of qualified immunity on summary judgment is an appealable final decision under section 1291.

We review denials of summary judgment de novo and apply the same standard of review required of a trial court. *Smith v. University of North Carolina*, 632 F.2d 316, 338 (4th Cir.1980). Summary judgment should be rendered if "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In making our decision, we must consider the facts in the light most favorable to the nonmoving party and draw all justifiable inferences in that party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986); *Smith*, 632 F.2d at 338.

## A.

As a general rule, government officials acting reasonably within the scope of their authority are immune from both defending themselves in a legal action and possible subsequent liability. Reasonable conduct is defined as conduct which "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). The test "generally turns on the 'objective legal reasonableness' of the actions," *Anderson v. Creighton*, 483 U.S. 635, 639, 107 S.Ct. 3034, 3038, 97 L.Ed.2d 523 (1987) (quoting *Harlow*, 457 U.S. at 819, 102 S.Ct. at 2738), ignoring considerations of the official's subjective intent. That is, we look to the law itself. The knowledge or intent of the particular official is irrelevant. We have previously held that the individual bringing suit against a public official bears the burden of clearly establishing the law allegedly violated. *Clark v. Link*, 855 F.2d 156, 160–61 (4th Cir.1988).

In determining whether or not an official violated clearly established law, we must look to the law at the time the alleged offense was committed. *Harlow*, 457 U.S. at 818, 102 S.Ct. at 2738; *Mitchell v. Forsyth*, 472 U.S. at 530, 105 S.Ct. at 2817. The law must be established with some particularity. *Anderson*, 483 U.S. at 640, 107 S.Ct. at 3039. In other words,

> the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. That is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful; but it is to say that in the light of pre-existing law the unlawfulness must be apparent.

*Id.* (citations omitted).

The Supreme Court constructed its test for qualified immunity by balancing com-

v. *Michigan Dept. of State Police*, 491 U.S. 58, 109 S.Ct. 2304, 2311 n. 10, 105 L.Ed.2d 45 (1989). Mitchell seeks damages against defen-

dants personally as permitted by *Hafer v. Melo*, —— U.S. ——, 112 S.Ct. 358, 116 L.Ed.2d 301 (1991).

peting interests " 'in vindication of citizens' constitutional rights and in public officials' effective performance of their duties[.]' " *Anderson,* 483 U.S. at 639, 107 S.Ct. at 3039 (quoting *Davis v. Scherer,* 468 U.S. 183, 195, 104 S.Ct. 3012, 3019, 82 L.Ed.2d 139 (1984)). In the interests of accomplishing public goals and encouraging public service, government officials should not be under the burden of defending themselves against every claim raised by an aggrieved individual, but neither should they be given free rein and the power of a governing position to infract the rights of citizens. The resulting objective test satisfies both interests by holding public officials responsible only for conduct that a reasonable official should readily be able to determine unlawful.

In reviewing appellants' qualified immunity defense, we look to substantive Eighth Amendment law as established at the time of the alleged violations. If preexisting law sufficiently established the contours of Eighth Amendment cruel and unusual punishment to include exercise deprivations, then prison officials cannot shelter themselves from liability. On the other hand, if the law was not so clearly established as to give notice to a reasonable prison official, we must permit appellants an immunity defense and dismiss this case against them. We find that prior decisions generally require that, absent unusual circumstances, some regular exercise opportunities be provided prisoners. While the bare facts on the record here indicate that some unusual circumstances may be present, we cannot, without more information, grant qualified immunity in this summary proceeding.

### B.

We had announced several decisions on the issue of exercise limitations before the incidents Mitchell complains of occurred. It may generally be considered that complete deprivation of exercise for an extended period of time violates Eighth Amendment prohibitions against cruel and unusual punishment.[3] However, there can be exceptional circumstances where the general rule does not apply.

This Court has repeatedly stated that when reviewing Eighth Amendment claims, courts must consider the totality of the circumstances. *Clay v. Miller,* 626 F.2d 345, 347 (4th Cir.1980); *Kirby v. Blackledge,* 530 F.2d 583, 587 (4th Cir.1976); *Sweet v. South Carolina Dept. of Corrections,* 529 F.2d 854, 865 (4th Cir.1975). " 'Cruel and unusual punishment,' as used in the Eighth Amendment, ... does not draw its meaning simply from the type of punishment or deprivation imposed; it is often intimately concerned with the time covered by the punishment or deprivation and the reasonable limits of prison supervision." *Sweet,* 529 F.2d at 865. "[I]n considering the totality of conditions pertinent to the right of exercise at a given institution, elements including the overall duration of incarceration, the length of time for which prisoners are locked in their cells each day, ... and the practical opportunities for the institution to provide prisoners with increased exercise opportunities must be considered." *Dawson v. Kendrick,* 527 F.Supp. 1252, 1300 (S.D.W.Va.1981). Thus, confinement or punishment conditions imposed under one set of circumstances may constitute an Eighth Amendment violation; yet the same conditions, imposed under different circumstances, would not.

By adopting a totality of the circumstances test, we have never held that denial of out-of-cell exercise opportunities is per se unconstitutional cruel and unusual punishment. However, our decisions at the time of the incidents in this case indicated that generally a prisoner should be permitted some regular out-of-cell exercise.[4] In *Clay* we stated, "[i]t is true that, in certain circumstances, restricting inmates' opportunities for physical exercise constitutes

---

**3.** In this ruling we do not reach the issue, disputed by the parties, of whether the Eighth Amendment requires a showing of actual injury by a prisoner for success in a deprivation of exercise claim. Our denial of qualified immunity rests on other grounds.

**4.** We do not make a distinction here between indoor and outdoor exercise opportunities as have several courts. Since Mitchell was only permitted to exercise within his cell, we consider the adequacy of that opportunity for qualified immunity.

cruel and unusual punishment in violation of the Eighth Amendment." 626 F.2d at 347. And in *Kirby* we said that "[m]any ... circumstances taken alone reach the level of cruel and unusual punishment, such as ... inadequate exercise...." 530 F.2d at 587. *See also Sweet*, 529 F.2d at 866.

Other circuits' decisions correspond to our view on this issue. "It is generally recognized that a total or near-total deprivation of exercise or recreational opportunity, without penological justification, violates Eighth Amendment guarantees." *Patterson v. Mintzes*, 717 F.2d 284, 289 (6th Cir.1983); *see Anderson v. Coughlin*, 757 F.2d 33, 35 (2d Cir.1985) ("some opportunity for exercise must be afforded to prisoners"); *Ruiz v. Estelle*, 679 F.2d 1115, 1152 (5th Cir.1982) ("confinement of inmates for long periods of time without opportunity for regular physical exercise constitutes cruel and unusual punishment"); *Spain v. Procunier*, 600 F.2d 189, 199 (9th Cir.1979) ("denial of fresh air and regular outdoor exercise and recreation constitutes cruel and unusual punishment"); *Rhem v. Malcom*, 371 F.Supp. 594, 627 (S.D.N.Y.), *affirmed*, 507 F.2d 333 (2d Cir.1974) (the right of a prisoner to exercise is "fundamental"); *see also Campbell v. Cauthron*, 623 F.2d 503, 507 (8th Cir.1980); *Campbell v. McGruder*, 580 F.2d 521, 546 (D.C.Cir.1978).

Although the cases in this area have generally established the constitutional necessity for some out-of-cell exercise, courts concede that penological considerations may, in certain circumstances, justify restrictions. *Patterson*, 717 F.2d at 289. The one court to specifically address justifications for exercise restrictions limited them to "unusual circumstances," or circumstances where "disciplinary needs made [outdoor exercise] *impossible.*" *Spain*, 600 F.2d at 199 (emphasis added). In that case, the court did not accept the state's justification that outdoor exercise was withheld to prevent attacks on prison staff and other inmates. It agreed on the necessity of segregating violent inmates from the population in general, but questioned why "other exercise arrangements were not made." *Id.* at 200. Further, it

would not allow cost to excuse constitutional violations. *Id.* It seems proper to require a similar showing of infeasibility of alternatives, excepting financial justifications, before granting qualified immunity.

### III.

Having set forth the applicable law as established by federal courts, we now consider the actions of the prison officials in this case. We find that, based on the ample case law, a reasonable prison official should have known that in most circumstances withholding all exercise opportunities from a prisoner over an extended period of time violates the Eighth Amendment. Yet Mitchell's unmanageable, violent nature may present exceptional circumstances here, justifying the deprivation. The facts on the record are inadequate for such a determination, and, therefore, we cannot grant prison officials qualified immunity based on the scant record before us.

Case law in existence prior to July 1983 makes apparent the view of this Circuit and the agreement among circuits that generally a prisoner must be provided some opportunity to exercise. These cases found either that prison officials provided exercise opportunities sufficient to meet "minimal constitutional requirements," *Wilkerson v. Maggio*, 703 F.2d 909, 912 (5th Cir.1983), or that, by not affording prisoners an opportunity to exercise, prison officials violated the Eighth Amendment. All cases, however, required some exercise opportunities be provided to inmates. Yet each of these decisions focused on the given facts and refused to issue a per se rule.

The appellate record before us provides little more than a description of the conditions of Mitchell's confinement. Mitchell was confined for extended periods of time, i.e. seven months and eleven months, without any opportunity for out-of-cell exercise. The length of his fully restricted confinement could have continued indefinitely, depending on the discretion of the Director's Classification Committee. Without additional evidence, these conditions could be said to violate our evolving constitutional standards of decency for prison confinement. Yet there are other factors sur-

rounding the confinement that bear on our judgment of constitutionality.

Prison officials contend that even if regular exercise opportunities are constitutionally required for prisoners, their actions were not unconstitutional. They claim that Mitchell's incorrigibly assaultive nature necessitated the imposed restrictions. The officials further claim that the in-cell exercise manual provided Mitchell a meaningful substitute to out-of-cell exercise. This may be true. We are not penologists and, without more than the record before us, cannot properly judge the necessity or adequacy of appellants' actions. However, a mere assertion of necessity cannot relieve prison officials of Eighth Amendment requirements. The Eighth Amendment protection from cruel and unusual punishment is provided specifically for convicted individuals. It is one of the few constitutional protections left intact for incarcerated individuals.[5] A detailed review of the feasibility of alternatives in this case, such as solitary out-of-cell exercise periods, or the adequacy of in-cell exercise would need to precede a grant of qualified immunity in a case such as this.

We do not decide by this opinion the constitutionality of prison officials' actions here. That would be better accomplished by a trial judge after a full hearing on the facts.[6] We only decide that the evidence before us is not sufficient to determine qualified immunity.

In summary, we conclude that precedent from this and other circuits clearly establish that depriving inmates of all meaningful opportunities to exercise generally violates the Eighth Amendment prohibitions against cruel and unusual punishment.

Exceptions may be made under exigent circumstances that necessitate constriction of these rights. Because the record in this case does not adequately address all the issues necessary to determine whether prison officials violated clearly established law, we cannot grant qualified immunity at this time. We remand this case for further findings of fact in order to determine whether or not prison officials' conduct in this case constituted cruel and unusual punishment under the principles stated herein.

REMANDED WITH INSTRUCTIONS.

---

**5.** *See Turner v. Safley,* 482 U.S. 78, 87–88, 107 S.Ct. 2254, 2260–61, 96 L.Ed.2d 64 (1987), where the Court rejects a strict scrutiny standard of review for violations of prisoners' constitutional rights (first amendment rights in this case). The Court, instead, required only that "a prison regulation that burdens fundamental rights [be] 'reasonably related' to legitimate penological objectives...." *Id.* at 87, 107 S.Ct. at 2260. In his dissent, Justice Stevens argued that this standard "would seem to permit disregard for inmates' constitutional rights whenever the imagination of the warden produces a plausible security concern and a deferential trial court is able to discern a logical connection between

that concern and the challenged regulation." *Id.* at 100–01, 107 S.Ct. at 2267–68.

**6.** The most recent Supreme Court decision on Eighth Amendment violations mandates "inquiry into a prison official's state of mind when it is claimed that the official has inflicted cruel and unusual punishment." *Wilson v. Seiter,* — U.S. ——, 111 S.Ct. 2321, 2324, 115 L.Ed.2d 271 (1991). The Court requires that plaintiffs prove officials acted with "deliberate indifference" in order to show a constitutional violation. *Id.* 111 S.Ct. at 2326.