976 F.2d 726
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Johnathan LEE X, Plaintiff-Appellant,
v.
Edward W. MURRAY, Director of Corrections; Toni V. Bair;
Raymond M. Muncy; William S. Lawhon; Bonita Eggleston;
Gail Jones; Gary McKinley; C. D. Lawsen; Edward C.
Morris; David A. Williams; W. Young; Thomas Parlett;
Officer Ingram; A. Jallah; Lieutenant Parker; Virgil May;
Larry Platt; Williams; Joseph Kell; Dorothy Clark,
Defendants-Appellees.
 No. 90-6814.
 United States Court of Appeals,
Fourth Circuit.
 Submitted: July 24, 1992
Decided: September 29, 1992
 
 Appeal from the United States District Court for the Eastern District of Virginia, at Norfolk. John A. MacKenzie, Senior District Judge. (CA-88-236-N)
 Johnathan Lee X, Appellant Pro Se. Robert Harkness Herring, Jr., Assistant Attorney General, Richmond, Virginia, for Appellees.
 E.D.Va.
 AFFIRMED IN PART VACATED IN PART AND REMANDED.
 Before PHILLIPS and SPROUSE, Circuit Judges, and BUTZNER, Senior Circuit Judge.
 PER CURIAM:
 
 OPINION
 
 1
 Johnathan Lee X appeals the district court's grant of summary judgment or dismissal of the claims raised in his 42 U.S.C. § 1983 (1988) action. Upon review of the record and the district court's opinion, we find no merit in X's claims that the Defendants violated his constitutional rights through improper medical treatment, confinement to segregation, various conditions of that confinement,[1] deprivation of a bed board and prescription shoes, interference with his mail, and interference with his right to practice religion by using a prayer rug and speaking with spiritual leaders while in segregation. Accordingly, we affirm the district court's order on its reasoning with respect to those issues. X v. Murray, No. CA-88-236-N (E.D. Va. Mar. 13, 1990). X's remaining claims, which concern interference with the use of his religiously adopted name, deprivation of his religious tapes while in segregation, and deprivation of exercise require more discussion.
 
 
 2
 X alleged that when he was placed in administrative segregation, his property was inventoried and thirty-six religious tapes were collected. X requested that the tapes be returned to him and prison officials refused this request. X alleged that his religious tapes were withheld by prison officials at the Virginia State Penitentiary (VSP) for nine months and for over a year at the Powhatan Correctional Center (PCC). Defendants responded that X was permitted to have ten tapes, and that although cassette tapes were not on the approved list of items permitted segregated prisoners, possession of up to ten tapes was routinely permitted.
 
 
 3
 X's allegations concerning the denial of religious tapes while in segregation are governed by O'Lone v. Estate of Shabazz, 482 U.S. 342 (1987), and Sweet v. South Carolina Dep't of Corrections, 529 F.2d 854 (4th Cir. 1975). A prisoner's desire to practice religion may be restricted only upon a showing that the restriction is reasonably related to legitimate penological interests. O'Lone, 482 U.S. at 349.
 
 
 4
 The factual dispute over whether X had possession of his religious tapes was material, prohibiting the grant of summary judgment for the Defendants. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 24849 (1986). If X was denied the right to all religious tapes for many months, as he alleges, that denial of religious freedom must be justified by a legitimate penological interest to avoid a constitutional violation. The legitimacy of such an interest is undermined by the affidavits which state that X was permitted to have his tapes and, more importantly, by the statement that as a general practice, possession of cassette tapes was permitted in segregation. The absence from the record of an asserted penological interest justifying any restriction and the factual conflict over whether X was allowed the tapes require us to remand this claim to the district court to determine whether Defendants allowed X to have his tapes while in segregation and, if not, whether the denial was constitutional.
 
 
 5
 X also claimed his constitutional rights were violated by prison officials' use of a religiously offensive name. According to X, he was temporarily denied the right to receive back surgery at the Medical College of Virginia (MCV) because of his refusal to wear a medical identification bracelet which identified him by a name offensive to his religious beliefs. He was instructed to wear a hospital bracelet which bore the name "Jonathan Lee Smith." He refused to wear the bracelet, claiming that it was offensive to him, for religious reasons, to be identified by the name "Smith."
 
 
 6
 A prison official took X, who was allegedly in excruciating pain, from MCV and returned him to VSP. X claimed prison officials explained that X was required to use the name "Smith" at MCV because it was X's "legal" name. X was readmitted to the hospital under the name of "Jonathan Lee X" for removal of two herniated discs sixteen days later, following intervention on his behalf by an attorney. X claimed that he suffered greatly from the delay in his surgery.
 
 
 7
 The district court dismissed this claim on the basis that X had no right, absent a court-ordered name change, to demand that MCV use a name other than that on his prison records. The court reasoned that the obvious need for identification of patients and the added security risks of treating prisoners rendered wearing a proper identification bracelet an institutional necessity.
 
 
 8
 In Ali v. Dixon, 912 F.2d 86 (4th Cir. 1990), this Court considered the circumstances under which prison officials may condition the receipt of services or benefits upon use of a religiously offensive name. In Ali, the plaintiff claimed that the absence of his religious name from his prison file required him to use his old, religiously offensive name in withdrawing money from his trust fund account. We found that the prison's refusal to add Ali's new name to his prison record impinged on his First Amendment rights to the extent it forced Ali to acknowledge his religiously offensive name to receive services or benefits to which he was entitled. Id. at 90. Because defendants had not advanced any penological justification for refusing to add Ali's name to his prison file, we found a First Amendment claim stated. Id.
 
 
 9
 Similarly, here, X was initially refused medical treatment apparently because his prison medical records were maintained only in his old name. Again, as in Ali, Defendants have proffered little penological justification for this practice.[2] On this record, and in light of Ali, we must vacate the district court's dismissal of this claim. We note that because X failed to timely assert his claim against the MCV Defendants, only the conduct of the VSP Defendants is before the district court on remand of this claim.
 
 
 10
 X's second claim of constitutional violation with respect to his religiously adopted name concerned the prison mailroom's use of both the names "Smith" and "X" to identify X's mail. X apparently complained on numerous occasions that the use of the name "Smith" on his mail was offensive to him. He did not, however, allege that his mail was delayed or misdelivered but only that it bore two names for identification purposes.
 
 
 11
 This claim was properly dismissed. X failed to allege the denial of any benefit as his mail was neither delayed nor misdelivered. The use of both names on official envelopes was constitutionally permissible. See Ali v. Dixon, 912 F.2d 86 (4th Cir. 1990).
 
 
 12
 X's final claim concerns his limited right to exercise. He averred a denial of this right for an extended period of time because of his confinement in administrative segregation for over fifteen months. Because, due to his medical condition, he may not have been able to participate in available exercise during some of his confinement in segregation, the record is unclear as to the exact duration of the claimed deprivation.
 
 
 13
 The record also reveals conflicting facts concerning the amount of exercise provided and the intent of prison officials with respect to that exercise. Virginia Department of Corrections regulations state that "segregation inmates should be allowed a minimum of one hour of out of cell exercise three separate days per week in a supervised area." Division Operating Procedure 822-7.5(14) (1992). X complained that on many occasions at VSP these exercise periods were canceled because of rain, cold weather, or the guard's discretion.
 
 
 14
 A VSP officer averred that outside recreation was canceled only for inclement weather and when the temperature fell below thirty-two degrees. In response to an inmate grievance form, prison officials stated that exercise was also canceled when there was a staff shortage. A prison official averred that state exercise regulations were followed at PCC.
 
 
 15
 A constitutional claim of deprivation of exercise has both objective and subjective components. Wilson v. Seiter, 59 U.S.L.W. 4671 (U.S. 1991). The length of time an inmate is deprived of exercise is an essential element of the objective component of an Eighth Amendment violation. Mitchell v. Rice, 954 F.2d 187 (4th Cir. 1992). The amount of exercise provided is also critical to the objective component. See id. (complete deprivation of exercise for extended period violates Eighth Amendment); Davenport v. DeRobertis, 844 F.2d 1310, 1315 (7th Cir.) (failure to provide inmates confined for more than a very short period with opportunity for at least five hours a week of exercise outside the cell raises serious constitutional questions), cert. denied, 488 U.S. 908 (1988); Ruiz v. Estelle, 679 F.2d 1115, 1151-52 (5th Cir.) (affirming district court order mandating one hour of exercise per day for inmates confined to segregation for more than three consecutive days), aff'd in part and vacated in part, 688 F.2d 266 (5th Cir. 1982), cert. denied, 460 U.S. 1042 (1983); Sweet v. South Carolina Dep't of Corrections, 529 F.2d 854, 866 (1975) (two one-hour exercise periods may not be sufficient where confinement is lengthy).
 
 
 16
 The subjective component of an Eighth Amendment violation requires inquiry into a prison official's state of mind. The element is proven by evidence of deliberate indifference to an inmate's need for regular exercise. Wilson v. Seiter, 59 U.S.L.W. 4671, 4673 (U.S. 1991).
 
 
 17
 The district court incorrectly granted summary judgment with respect to X's exercise claim. Material factual disputes existed as to the amount of exercise permitted X while he was confined in segregation and the officials' intent with respect to cancellation of exercise periods. Whether the duration of the deprivation was sufficient to merit constitutional attention was also unclear. The factual dispute was material both because the amount of exercise permitted is disputed and because the state exercise policy itself causes constitutional concern.
 
 
 18
 Permitting only three one-hour exercise periods per week may itself violate the Eighth Amendment where, as here, the time period at issue is lengthy. See Davenport, 844 F.2d at 1315; Ruiz v. Estelle, 679 F.2d at 1151-52; Sweet, 529 F.2d at 860-61; see also Spain v. Procunier, 600 F.2d 189, 199-200 (9th Cir. 1979) (exercise important to psychological and physical well being of inmates confined in segregation). The constitutional concern is enhanced by X's averments that the regulation's standard was not met for weeks at a time and that cancellations were caused by the guard's desire to avoid overseeing the inmates' recreation. The claim is remanded for further consideration.
 
 
 19
 Accordingly, the judgment of the district court is affirmed in part and vacated in part, and the case is remanded for further consideration of X's claims that he was denied his religious tapes, that his medical treatment was delayed as a result of his refusal to use a religiously offensive name, and that he was deprived of his right to exercise. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the Court and argument would not aid the decisional process.
 
 
 20
 AFFIRMED IN PART; VACATED AND REMANDED IN PART
 
 
 
 [1]
 X's claim that deprivation of his right to exercise violated the Eighth Amendment is discussed below
 
 
 [2]
 The need for a court-ordered name change was raised by the district court. It is unclear, however, that the Defendants' practice depends on the existence of a court-ordered name change. If it does, the district court may decide whether the penological justification for such a requirement outweighs the deprivation of X's religious liberty. See Azeez v. Fairman, 795 F.2d 1296, 1299-1301 (7th Cir. 1986)