Robin ANDERSON, et al.,
Plaintiffs-Appellants,

v.

Thomas A. COUGHLIN, III, Commissioner of the New York State Department of Correctional Services, et al., Defendants-Appellees.

No. 461, Docket 84–2259.

United States Court of Appeals,
Second Circuit.

Argued Dec. 3, 1984.
Decided March 11, 1985.

John A. Beck, New York City (William E. Hellerstein, Dori A. Lewis, The Legal Aid Society, New York City, on brief), for plaintiffs-appellants.

Adeline Liu, Asst. Atty. Gen., New York City (Robert Abrams, Atty. Gen., Frederick K. Mehlman, Stanley A. Camhi, Asst. Attys. Gen., New York City, on brief), for defendants-appellees.

Before MANSFIELD, OAKES and NEWMAN, Circuit Judges.

JON O. NEWMAN, Circuit Judge:

This case illustrates the uses and limits of litigation challenging the conditions of prison confinement. The litigation was brought as a class action on behalf of prisoners confined to special housing units (SHU's) in several New York state prisons. As a result of constructive negotiations between counsel for the prisoners and the state prison officials, a settlement was reached on a range of issues including access to legal materials and opportunities for physical recreation. Two remaining issues concerning indoor exercise facilities and exercise equipment were resolved adversely to the prisoners by a judgment of the District Court for the Southern District of New York (Charles L. Brieant, Judge) entered upon the granting of defendants'

motion for summary judgment. We affirm.

As narrowed by the prior settlements, the litigation now concerns only prisoners confined in SHU's at Green Haven and Sing Sing (formerly Ossining) Correctional Facilities. Prisoners are confined to SHU's while awaiting disciplinary proceedings for violations of prison rules and while serving time in segregation as punishment for such violations. SHU's are also used to house prisoners for mental observation and for voluntary and involuntary protective custody. The SHU's are self-contained prisons-within-a-prison, consisting of individual cells, guard control areas, a kitchen, and an outdoor exercise area. At Green Haven, the main SHU has 50 cells, and the "A–2" SHU has 18 cells. At Sing Sing the SHU has 15 cells. Prisoners are usually confined to their cells for approximately 23 hours a day, leaving only for one hour of outdoor exercise, showers, cell-cleaning, medical attention, and visits. Confinement lasts for several months and, in a few instances, for more than a year.

The outdoor exercise area for the main SHU at Green Haven consists of two paved roof-top areas, each measuring 30 by 60 feet and surrounded on all sides by brick walls 20 feet in height. Each area has a bench. The outdoor exercise area for the "A–2" unit is a yard measuring 90 by 90 yards with grassy areas and concrete walkways, surrounded by walls of housing units. This area contains two benches. At Sing Sing the outdoor exercise area consists of four fenced sections of a yard, each measuring 42 by 31 feet. The yard is surrounded by brick walls. Each section contains one basketball hoop and a bench. SHU prisoners at Green Haven and Sing Sing are not afforded access to any indoor exercise area.

The settlements, incorporated by the District Court into enforceable judgments, alleviated many of the complaints concerning use of the outdoor exercise areas. The exercise areas must contain no less space than is currently provided, must have at least one bench, and must be kept clear of snow and ice. Prisoners are assured one hour a day of exercise, exclusive of time to go to and from the exercise area, and they must be provided with a hat, winter coat, sweatshirt, footwear, and gloves during the exercise period. The settlement for Sing Sing provides, in addition, that each exercise area must have one basketball hoop, one basketball, one handball, one deck of playing cards, one set of checkers, and one bench. Prison officials opposed providing such items at Green Haven because of concern that objects would be thrown, accidentally or deliberately, from the roof-top exercise areas. For the "A–2" (ground-level) unit at Green Haven, two handballs are to be provided.

As a result of concerns expressed during oral argument of this appeal, officials at the two prisons have also agreed to abandon their prior practice of requiring prisoners to remain in the exercise areas during the entire one-hour period when sudden rain or snow occurs. Prisoners had complained that they were deterred from electing to exercise outdoors by the threat of not being able to return to their cells in inclement weather. Henceforth they will be permitted to return to their cells if rain or snow suddenly occurs or if the temperature drops precipitously.

What now remains in dispute is the prisoners' claim that they are entitled to indoor exercise areas in the SHU's at Green Haven and Sing Sing and are also entitled to recreational equipment at the outdoor exercise areas in the SHU's at Green Haven. Judge Brieant ruled that the existing arrangements for exercise afforded to SHU prisoners did not violate the Eighth Amendment's prohibition on cruel and unusual punishment, made applicable to the states by the Fourteenth Amendment, and that federal courts had no authority to require either additional space or additional equipment. We agree.

█ The pertinence of the Eighth Amendment to prison conditions and its general meaning in the prison context are not in dispute. Conditions of confinement inflict cruel and unusual punishment when

they result "in unquestioned and serious deprivations of basic human needs" or "deprive inmates of the minimal civilized measure of life's necessities." *Rhodes v. Chapman,* 452 U.S. 337, 347, 101 S.Ct. 2392, 2399, 69 L.Ed.2d 59 (1981). However, conditions that are "restrictive and even harsh" are "part of the penalty that criminal offenders pay for their offenses against society." *Id.* Courts have recognized that some opportunity for exercise must be afforded to prisoners. *See, e.g., Ruiz v. Estelle,* 679 F.2d 1115, 1151–52, *modified on other grounds,* 688 F.2d 266 (5th Cir.1982), *cert. denied,* 460 U.S. 1042, 103 S.Ct. 1438, 75 L.Ed.2d 795 (1983); *Newman v. Alabama,* 559 F.2d 283, 291 (5th Cir.1977), *rev'd in part on other grounds sub nom. Alabama v. Pugh,* 438 U.S. 781, 98 S.Ct. 3057, 57 L.Ed.2d 1114 (1978). However, though courts have played a helpful role in assisting prisoners and prison officials to negotiate mutually acceptable terms for the provision of exercise opportunities, as has occurred in this case, they have not found in the Eighth Amendment a broad license to require prison officials to meet all of the recreational standards that have been recommended by penologists. *See, e.g., Dorrough v. Hogan,* 563 F.2d 1259, 1264 (5th Cir.1977) (per curiam), *cert. denied,* 439 U.S. 850, 99 S.Ct. 153, 58 L.Ed.2d 153 (1978). Judicial reluctance stems not from insensitivity; rather it reflects an awareness of the relatively narrow authority of judges and the appropriate, but by no means unlimited, deference to be accorded the decisions of prison administrators. *See Jones v. North Carolina Prisoners' Labor Union, Inc.,* 433 U.S. 119, 97 S.Ct. 2532, 53 L.Ed.2d 629 (1977); *Procunier v. Martinez,* 416 U.S. 396, 94 S.Ct. 1800, 40 L.Ed.2d 224 (1974). In this Circuit, we have previously considered the conditions of confinement of SHU prisoners at Green Haven, including outdoor exercise for an hour "in a small, enclosed yard, open to the sky," and found these conditions consistent with Eighth Amendment requirements. *Sostre v. McGinnis,* 442 F.2d 178, 186 (2d Cir.1971) (in banc), *cert. denied,* 404 U.S. 1049, 92 S.Ct. 719, 30 L.Ed.2d 740 (1972).

*See also Frazier v. Ward,* 426 F.Supp. 1354, 1369 (N.D.N.Y.1977) (one hour per day of outdoor exercise constitutionally sufficient).

In support of their claims, the prisoners presented the affidavits of two physicians, knowledgeable in the field of corrections. Their affidavits appear to have been prepared as an assessment of the adequacy of the exercise opportunities afforded to SHU prisoners before the improvements achieved by the settlements. Both doctors noted the importance of exercise for physical and mental health, especially in circumstances of prolonged and isolated prison confinement. Dr. Seymour L. Halleck expressed the opinion that the isolation of SHU prisoners and the "denial of a meaningful exercise program," which he then understood to exist, have "the potential for causing severe psychological and/or physical harm." Dr. William B. Bateman, Jr. expressed his understanding that "a substantial portion" of the SHU population "does not get daily, regular, vigorous exercise" and concluded that, "as a result of this deprivation, it is likely that some of these inmates may suffer serious mental or physical harm."

These expert opinions "do not establish the constitutional minima," *Bell v. Wolfish,* 441 U.S. 520, 544 n. 27, 99 S.Ct. 1861, 1877 n. 27, 60 L.Ed.2d 447 (1979), nor do they entitle the plaintiffs to resist summary judgment and obtain a trial on their contentions. Neither opinion is an assessment of the conditions that currently exist. Furthermore, the doctors have refrained from asserting that the conditions, even as they understood them, were reasonably certain to be harmful. The most they can say is that it is "likely" that some ill effects "may" be suffered or that there is "the potential" for such effects. What Doctors Halleck and Bateman recommend is a full hour of exercise every day, which the prison officials have now agreed to provide. Dr. Bateman goes slightly further and calls for "adequate recreational equipment," but he urges such equipment so that the prisoners' exercise will affect

"favorably their mental and physical health." That is not the same as saying that the absence of such equipment will be injurious to health.

The claims were appropriate for summary judgment because no genuine issues of material fact were in dispute. The facts concerning the exercise area, the opportunities for use, and the limited equipment (virtually non-existent at Green Haven) were unchallenged. Nor was a trial needed to afford the trier an opportunity to assess the credibility or the force of the opinions offered by plaintiffs' experts. Accepting the sincerity of the views expressed and their persuasiveness as to sound prison policy, we conclude that Judge Brieant was entirely correct in granting summary judgment to the defendants on the prisoners' constitutional claims.

There are numerous aspects of prison confinement that have the potential for causing deleterious effects on the physical and mental well-being of prisoners. The fact of confinement itself is chief among them. The Eighth Amendment does not guarantee that all such effects will be prevented, nor even that all reasonable steps will be taken to minimize the risks. By prohibiting cruel and unusual punishment, the Amendment stands as a barrier against fundamental and shocking indecency to those whom the state has chosen to confine for their crimes. No doubt indoor exercise space would be useful to assure opportunity for vigorous exercise during inclement weather, and equipment for the outdoor exercise areas at Green Haven would enable the SHU prisoners to make better use of their exercise time. However, neither an occasional day without exercise when weather conditions preclude outdoor activity nor reliance on running, calisthenics, and isometric and aerobic exercises in lieu of games is cruel and unusual punishment. With outdoor recreation space provided and opportunity for its daily use assured, the absence of additional exercise space indoors and of recreational equipment for use in the outdoor space is not a denial of constitutional rights.

The judgment of the District Court is affirmed.