**Ronald DAVIDSON, Plaintiff,**

v.

**Thomas COUGHLIN, III, (Two Cases) et al., Defendants.**

**Nos. 81 Civ. 5657 (PKL), 83 Civ. 2404 (PKL), (rel. 81 Civ. 0390, 83 Civ. 2405 (PKL)).**

United States District Court, S.D. New York.

June 19, 1997.

Stroock & Stroock & Lavan, New York City (Elizabeth A. Mullins, Edward P. Grosz, Randi Lane Maidman, of counsel), for Plaintiff.

Dennis C. Vacco, Attorney General of the State of New York, Office of the Attorney General, New York City (Mary Louise Kiernan, of counsel), for Defendants.

## OPINION AND ORDER

LEISURE, District Judge.

Plaintiff, a state prisoner, brought these related actions against several corrections officials under 42 U.S.C. § 1983, alleging that they violated the Eighth Amendment's prohibition against cruel and unusual punishment by depriving him of outdoor exercise. On September 11, 1981, plaintiff, *pro se*, filed civil action 81 Civ. 5657, alleging that defendants violated the Eighth Amendment by allowing him less than the regulatory minimum of one hour of outdoor exercise per day between July 2 and August 2, 1981.[1] On March 28, 1983, plaintiff, *pro se*, filed civil action 83 Civ. 2404, alleging that defendants violated the Eighth Amendment by cutting short his outdoor exercise periods between October 1982 and February 15, 1983.[2] Before the Court is defendants' motion for summary judgment. In their motion, defendants argue that: (1) they are entitled to summary judgment on the merits of plaintiff's claims; (2) they are entitled to qualified immunity; (3) plaintiff's claims against certain defendants are barred because there is no allegation of personal involvement; and (4) the Eleventh Amendment bars recovery of damages from defendants in their official capacity. For the reasons stated below, the motion is granted.

1. At the time, the applicable regulation, 7 N.Y.C.R.R. § 301.5(b), provided that:

 Except as otherwise provided in this section, every inmate shall be permitted to exercise outside of his cell for at least one hour each day and where weather permits such exercise shall be permitted out of doors.

## FACTS

During the relevant time periods, plaintiff was an inmate at the Green Haven Correctional Facility in Stormville, New York ("Green Haven"). The undisputed facts, according to the pleadings, the parties' statements pursuant to Rule 3(g) of the Civil Rules of this Court, the supporting affidavits and other materials presented, are as follows.

## I. Civil Action 81 Civ. 5657

On June 26, 1981, plaintiff allegedly refused to comply with an order from Corrections Officer Lazerson to leave the Kosher Mess Hall. See Grosz Aff. Ex. A. Immediately thereafter, Officer Lazerson issued plaintiff a misbehavior report, and plaintiff was placed in "keeplock" pending a hearing. See Grosz Aff. Exs. A, B. An inmate placed in keeplock is generally confined to his cell for twenty-three hours a day, and allowed out for one hour of outdoor exercise per day. See Davidson Decl. ¶¶ 5–6; Grosz Aff. Ex. CC at 36. At the time, plaintiff's cell measured approximately 6'½" by 8'4" See Davidson Decl. ¶ 3; Grosz Aff. Ex. EE (photographs of cell). Outdoor recreation was offered in the morning from 10:00 a.m. to 11:00 a.m. ("morning yard"), in the afternoon from 2:00 p.m. to 3:00 p.m. ("afternoon yard"), and in the evening from approximately 6:00 p.m. to 9:00 p.m. ("evening yard"). See Grosz Aff. Ex. N at 202.

Plaintiff was released from keeplock on June 29, 1981, pending an investigation of the report filed against him. See Grosz Aff. Ex. B; Kiernan Aff. Ex. M. It is unclear whether plaintiff received the customary one hour per day of exercise during his three days in keeplock, but he admits that he received at least one or two exercise periods that generally lasted less than one hour. See Grosz Aff. Ex. N at 163 ("Each day I might have been given one period and that might have accrued to one or two periods during the

See Grosz Aff. Ex. HH.

2. Plaintiff is now represented by counsel in both civil action 81 Civ. 5657 and civil action 83 Civ. 2404.

duration of the keeplock.... They're supposed to be an hour, generally they weren't.").

After a hearing on July 2, 1981, the Adjustment Committee Lieutenant Wayne Strack presiding, sentenced plaintiff to seven days in keeplock and suspended his privileges, including recreation and yard, for thirty days beginning on July 2. *See* Grosz Aff. Ex. C. Because plaintiff had already served three days in keeplock, he owed four days on this sentence. *See id.* An inmate who has lost his yard privileges is not entitled to receive outdoor exercise with the general prison population unless he is in keeplock, in which case he is entitled to one hour of outdoor exercise per day. *See* Riley Aff. ¶¶ 10–13; Davidson Decl. ¶ 6 (stating that he was theoretically allowed one hour of outdoor exercise when he was in keeplock); Grosz Aff. Ex. S.

On July 5, 1981, while he was in keeplock, plaintiff wrote a letter to Superintendent Charles Scully complaining that he had only received 39 minutes of outdoor exercise during morning yard on that day. *See* Davidson Decl. Ex. A. That same day, he filed an inmate grievance complaint charging that he had received 39 minutes of outdoor exercise during morning yard, and that "[t]his happens virtually every day." *Id.* On July 6, his last day in keeplock, plaintiff filed a second inmate grievance alleging that "[o]nce again, keeplock inmates were denied their full hour (minimum standard) of exercise, per [7 N.Y.C.R.R. § 301.5(b) ]." Davidson Decl. Ex. B. He alleged that he had received only 40 minutes of outdoor exercise that day. *See id.*

Four days after plaintiff had been released from keeplock, Corrections Officer David Elson issued plaintiff his second misbehavior report because he attempted to use the outdoor exercise yard on the evening of July 10. *See* Davidson Decl. ¶ 11; Grosz Aff. Ex. E. In fact, plaintiff had attended outdoor yard every night for the preceding week. *See* Davidson Decl. Ex. E ("I went to yard at night all week long and nothing was said to me by any Officer or Sgt."). By letter dated July 13, 1981, plaintiff informed Superintendent Scully that because he had attended evening yard for the entire week, he had

assumed that he was entitled to evening yard privileges. *See id.* He also reiterated his position that, pursuant to section 301.5, he was entitled to one hour of outdoor exercise per day. *See id.*

Following a hearing on July 14 regarding the second misbehavior report, the Adjustment Committee, Lieutenant Ernest Edwards presiding, sentenced plaintiff to seven more days in keeplock effective July 10. *See* Grosz Aff. Ex. F; Kiernan Aff. Ex. M. By letter dated July 14, 1981, plaintiff again informed Superintendent Scully that because he had attended evening yard for the entire week, he had assumed that he was entitled to evening yard privileges. *See* Davidson Decl. Ex. F. Plaintiff filed a third inmate grievance on that same day alleging that, "We are not getting our full hour of exercise when on keeplock, often we get only 30–40 minutes." *Id.* Again, he argued that he was entitled to one hour of outdoor exercise per day pursuant to section 301.5. *See id.*

By letter dated July 16, 1981, plaintiff again complained to the Superintendent regarding limitations on his outdoor exercise privileges. *See* Davidson Decl. Ex. G ("Additionally, I again ask that I be afforded my *minimum standard* of at least one hour of exercise in the *outdoors* every day, per [section 301.5]." (emphasis in original)). On July 17, he filed a fourth inmate grievance asking that his "minimum standard of 1 hr. exercise in the out of doors be given me while in 30 day 'no yard/no recreation' status as per [section 301.5]." *Id.* He also wrote a letter to Dr. Marc Friedman, the Chief Physician at Green Haven, complaining that he was not receiving the regulatory minimum hour per day of outdoor exercise. *See* Davidson Decl. Ex. H. By letter dated July 20, 1981, plaintiff again complained to Superintendent Scully that he was not receiving the regulatory minimum hour per day of outdoor exercise. *See* Davidson Decl. Ex. I. By letter dated July 22, 1981, plaintiff complained to Commissioner Thomas Coughlin, III about the exercise restriction. *See* Davidson Decl. Ex. L.

On July 23, Corrections Officer C. Schoenberger issued plaintiff his third misbehavior report because he had allegedly harassed a

female employee of the Westchester County Medical Center on the previous day. *See* Grosz Aff. Ex. G; Riley Aff. Ex. A. By letter dated July 28, 1981, plaintiff complained to the Superintendent that he had only received 43 minutes of exercise that day in violation of section 301.5. *See* Compl. Ex. (letter dated July, 28, 1981). He wrote, "This type of incident has occurred many times in the past and I have notified you of it and filed grievances." *Id.* On July 29, the Adjustment Committee, Lieutenant Edwards presiding, sentenced plaintiff to seven days in keeplock for the harassment incident, effective July 23. *See* Grosz Aff. Ex. I; Riley Aff. Ex. A. Plaintiff's thirty day suspension of privileges ended on or about August 2, 1981. *See* Davidson Decl. ¶ 19.

During the thirty day period, plaintiff was in keeplock for a total of eighteen days. On those days, plaintiff was entitled to one hour of outdoor exercise per day. Plaintiff admits that he was allowed some outdoor exercise, but he alleges that it was often for periods of less than one hour. *See* Davidson Decl. ¶ 6; Pl.'s Mem. Law at 10. Although plaintiff wrote numerous letters complaining about the limitations on his outdoor recreation privileges and filed four grievances regarding the same, he never made any contemporaneous complaints alleging that he had ever been denied outdoor recreation completely; rather, he alleged that he was getting less than the regulatory minimum of one hour per day. Plaintiff now contends that while he was in keeplock there were days on which he was not allowed any exercise. *See* Davidson Decl. ¶ 6 ("I was often not given any exercise [while in keeplock]...."); Grosz Aff. Ex. N at 212.

During the remaining twelve days, when he was not in keeplock, plaintiff was not entitled to outdoor exercise. Nevertheless, he did receive some outdoor exercise during these twelve days. Plaintiff twice told Superintendent Scully that he had attended night yard for the week preceding July 10, 1981. Moreover, when plaintiff was not in keeplock, he was allowed to participate in out-of-cell activities other than outdoor yard. An inmate whose yard privileges have been suspended may attend religious services, receive visitors, study in the library, dine in the mess hall three times per day, and participate in other programs. *See* Riley Aff. ¶¶ 14–15; Grosz Aff. Ex. N at 200. Between July 6 and August 3, 1981, plaintiff was never denied an opportunity to attend Saturday morning religious services. *See* Grosz Aff. Ex. N at 200. Plaintiff does not remember whether he had any visitors between July 6 and August 1981. *See* Grosz Aff. Ex. N at 202. Plaintiff concedes that he was allowed to walk to the Kosher Mess Hall and other places within the prison. *See* Davidson Decl. ¶ 6. On July 17, for example, plaintiff left his cell to obtain medication, to complain to corrections officers, and to file a grievance. *See* Davidson Decl. Ex. I. On July 18, plaintiff again left his cell to complain to corrections officers and he also attended the visiting room. *See id.* On July 21, plaintiff left his cell to speak to counselors and a grievance officer about his alleged problems. *See* Davidson Decl. Ex. L. On July 22, plaintiff left his cell to attend a grievance interview, to complain to corrections officials and to attend an off-facility medical appointment at the Westchester County Medical Center. *See id.*; Grosz Aff. Ex. G.

## II. Civil Action 83 Civ. 2404

In or about October 1982, plaintiff was transferred to cell block "A" at Green Haven. *See* Statement Resp. to Defs.' Statement Pursuant to Rule 3(g) at 6, ¶ 1 (hereinafter "Pl.'s 3(g)"); Davidson Decl. ¶ 23. At the time, plaintiff's cell measured approximately 6'½" by 8'4". *See* Davidson Decl. ¶ 3; Grosz Aff. Ex. EE (photographs of cell). Outdoor recreation was offered in the morning and in the afternoon. *See* Compl.; Kiernan Aff. Ex. A at 60, Ex. D at 46; Grosz Aff. Ex. X at 26–27, 40, Ex. Y at 20, 25–26, Ex. CC at 40. Each of these periods was scheduled to last for at least one hour. *See* Compl. (alleging that morning yard lasted from 10:00 a.m. to 11:00 a.m.); Kiernan Aff. Ex. A at 60 (alleging that afternoon yard lasted from approximately 2:00 p.m. to 3:00 p.m.), Ex. D at 46 (alleging that morning yard lasted from 9:00 a.m. to 11:00 a.m. and that afternoon yard lasted from 1:00 p.m. until after 3:20 p.m.); Grosz Aff. Ex. X at 26–27, 40 (alleging that morning yard lasted from 10:00 a.m. to

11:00 a.m. and that afternoon yard lasted from 2:00 p.m. to 3:00 p.m.), Ex. Y at 20, 25–26 (alleging that morning yard lasted from approximately 10:00 a.m. to 11:00 a.m. and that afternoon yard lasted from approximately 2:00 p.m. to 4 p.m.), Ex. CC at 40 (alleging that morning yard lasted from approximately 9:00 a.m. to 11:00 a.m. and that afternoon yard lasted from approximately 1:00 p.m. to 3:30 p.m. in the winter and from 1:00 p.m. to 4:30 p.m. in the summer). In addition, outdoor recreation was generally offered in the evening from approximately 6:00 p.m. to 9:00 p.m., although evening yard was not always available during the relevant period. *See* Grosz Aff. Ex. N at 75, Ex. CC at 40; Kiernan Aff. Ex. A at 60. Inmates were allowed to attend more than one yard period per day. *See* Grosz Aff. Ex. X at 40.

From October 1982 until February 15, 1983, plaintiff was often let out of his cell late for both the morning and the afternoon outdoor yard period. *See* Rule 3(g) Statement of Defs. ¶ 2 [hereinafter Defs.' 3(g) ]; Pl.'s 3(g) ¶ 2; Grosz Aff. Ex. N at 56, 72, 80; Davidson Decl. ¶¶ 23, 26. On some occasions, plaintiff was not allowed out of his cell at all for morning yard. *See* Defs.' 3(g) ¶ 3; Pl.'s 3(g) ¶ 3. Plaintiff was often deprived of a full hour of outdoor exercise during evening yard as well. *See* Davidson Decl. ¶ 28; Grosz Aff. Ex. N at 72, 75–76, 80. Moreover, the exercise yard was closed between ten and fifteen minutes early, each period, each day. *See* Defs.' 3(g) ¶ 4; Pl.'s 3(g) ¶ 4. Accordingly, almost every day, he was allowed less than an hour of outdoor exercise in the morning, in the afternoon, and in the evening, when evening yard was available. *See* Grosz Aff. Ex. N at 71–72.

Plaintiff was never placed under disciplinary keeplock during this time period. *See* Defs.' 3(g) ¶ 6; Pl.'s 3(g) ¶ 6. Therefore, he participated in many out-of-cell activities other than outdoor yard. For example, he was allowed out of his cell to dine in the Kosher Mess Hall, to receive visitors, to attend religious services—for a total of over three hours a week, to attend medical appointments, to study in the library and the law library, to exercise in the gym, and to attend outdoor activities at Fay Field. *See* Grosz Aff. Ex. N at 93–97, 117–18, 154–56. Fay Field was a site for picnics, football games and soccer games. *Id.* at 155. Occasionally, corrections officers deprived him of the opportunity to participate in these out-of-cell activities, but they primarily deprived him of the opportunity to attend a full hour of outdoor yard. *See id.* at 100, 117–18, 120.

On January 31, 1983, plaintiff filed an inmate grievance complaint alleging that for several months, he had been let out of his cell late for morning and afternoon yard. *See* Compl. Ex. A. By letter dated February 2, 1983, plaintiff complained to Superintendent Scully that he had "been denied full out of doors exercise periods in the yard" since October 1982. Davidson Decl. Ex. N.

## DISCUSSION

### I. SUMMARY JUDGMENT STANDARD

The moving party is entitled to summary judgment if the Court determines that there is no genuine issue of material fact and that based on the undisputed facts, the moving party is entitled to a judgment as a matter of law. *See* Fed.R.Civ.P. 56(c); *Allen v. Cuomo,* 100 F.3d 253, 258 (2d Cir.1996) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986)); *Kulak v. City of New York,* 88 F.3d 63, 70 (2d Cir.1996) ("A court must determine 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.' " (quoting *Anderson,* 477 U.S. at 251–52, 106 S.Ct. at 2512)). The moving party bears the burden of showing that no genuine issue of material fact exists. *See Vann v. City of New York,* 72 F.3d 1040, 1048 (2d Cir.1995) (citing *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970)). Furthermore, in moving for summary judgment against a party who will bear the ultimate burden of proof at trial, the movant may satisfy his burden by pointing to an absence of evidence to support an essential element of the non-movant's claim. *Vann,* 72 F.3d at 1048. Therefore, a party moving for summary judgment "must prevail if the [non-movant] fails to come forward with enough

evidence to create a genuine factual issue to be tried with respect to an element essential to [his] case." *Allen,* 100 F.3d at 258 (citing *Anderson,* 477 U.S. at 247–48, 106 S.Ct. at 2509–19); *see Gottlieb v. County of Orange,* 84 F.3d 511, 518 (2d Cir.1996).

In determining whether there is a genuine issue of material fact, the Court must resolve all ambiguities and draw all justifiable inferences in favor of the nonmovant. *See Graham v. Henderson,* 89 F.3d 75, 79 (2d Cir. 1996) (citing *Anderson,* 477 U.S. at 255, 106 S.Ct. at 2513–14). However, a properly supported motion for summary judgment will not be defeated by "conclusory statements, conjecture, or speculation by the party resisting the motion." *Kulak,* 88 F.3d at 71. The Court's function on a motion for summary judgment is not to try issues of fact, but rather to determine whether there is a genuine issue of material fact to be tried. *See id.; Vann,* 72 F.3d at 1049.

## II. THE MERITS OF THE EIGHTH AMENDMENT CLAIMS

■ The Eighth Amendment, applicable to the states through the Due Process clause of the Fourteenth Amendment, *Robinson v. California,* 370 U.S. 660, 82 S.Ct. 1417, 8 L.Ed.2d 758 (1962), prohibits punishments that involve the unnecessary and wanton infliction of pain. *See Rhodes v. Chapman,* 452 U.S. 337, 346, 101 S.Ct. 2392, 2398–99, 69 L.Ed.2d 59 (1981). A prisoner's conditions of confinement fall within the ambit of the Eighth Amendment. *See id.* at 345, 101 S.Ct. at 2398. Rather than provide courts with a fixed formula to determine whether particular conditions constitute cruel and unusual punishment, the Eighth Amendment requires courts to look to the "evolving standards of decency that mark the progress of a maturing society." *Id.* at 346, 101 S.Ct. at 2399 (quoting *Trop v. Dulles,* 356 U.S. 86, 101, 78 S.Ct. 590, 598, 2 L.Ed.2d 630 (1958) (plurality opinion)) (internal quotation marks omitted). So long as they do not fall below the contemporary standards of decency, conditions that are "restrictive and even harsh, ... are part of the penalty that criminal offenders pay for their offenses against society." *Id.* at 347, 101 S.Ct. at 2399; *accord*

*Anderson v. Coughlin,* 757 F.2d 33, 35 (2d Cir.1985).

■ It is well-established that the Eighth Amendment "does not mandate comfortable prisons." *Rhodes,* 452 U.S. at 349, 101 S.Ct. at 2400. The Court of Appeals for the Second Circuit has instructed the District Court to defer to the decisions of prison officials and to shun invitations to micromanage the prison system:

> [T]hough courts have played a helpful role in assisting prisoners and prison officials to negotiate mutually acceptable terms for the provision of exercise opportunities ..., they have not found in the Eighth Amendment a broad license to require prison officials to meet all of the recreational standards that have been recommended by penologists. Judicial reluctance stems not from insensitivity; rather it reflects an awareness of the relatively narrow authority of judges and the appropriate, but by no means unlimited, deference to be accorded the decisions of prison administrators.

*Anderson,* 757 F.2d at 35.

■ To prevail on a claim that the conditions of his confinement constitute cruel and unusual punishment, a plaintiff must satisfy an objective test and a subjective test. *Jolly v. Coughlin,* 76 F.3d 468, 480 (2d Cir.1996); *see Farmer v. Brennan,* 511 U.S. 825, 834, 114 S.Ct. 1970, 1977, 128 L.Ed.2d 811 (1994). To satisfy the objective test, a "plaintiff must demonstrate that the conditions of his confinement result 'in unquestioned and serious deprivations of basic human needs.'" *Jolly,* 76 F.3d at 480 (quoting *Anderson,* 757 F.2d at 35 (internal quotation marks omitted in *Jolly*)); *see Farmer,* 511 U.S. at 834, 114 S.Ct. at 1977 (holding that prison official's acts must deprive inmate of "the minimal civilized measure of life's necessities" (quoting *Rhodes,* 452 U.S. at 347, 101 S.Ct. at 2399 (internal quotation marks omitted))); *May v. Baldwin,* 109 F.3d 557, 565 (9th Cir.1997). The subjective test requires a plaintiff to show that the *defendant* prison officials imposed those conditions with deliberate indifference. *See Farmer,* 511 U.S. at 834, 114 S.Ct. at 1977; *May,* 109 F.3d at 565; *Jolly,* 76 F.3d at 480.

■ Because exercise is one of the basic human needs protected by the Eighth Amendment, prisoners must be afforded some opportunity for exercise. *See Williams v. Greifinger,* 97 F.3d 699, 704 (2d Cir.1996); *Anderson,* 757 F.2d at 35; *see also Sostre v. McGinnis,* 442 F.2d 178, 193 & n. 25 (2d Cir.1971) (noting that availability of exercise is an important consideration in determining whether conditions of segregated confinement violate the Eighth Amendment), *cert. denied,* 404 U.S. 1049, 92 S.Ct. 719, 30 L.Ed.2d 740 (1972). Although a prisoner may satisfy the objective component of the Eighth Amendment test by showing that he was denied meaningful exercise for a substantial period of time, see *Mitchell v. Rice,* 954 F.2d 187, 191 (4th Cir.), *cert. denied,* 506 U.S. 905, 113 S.Ct. 299, 121 L.Ed.2d 222 (1992), temporary denials of exercise may be constitutional, *see May,* 109 F.3d at 565. *Compare Jolly,* 76 F.3d at 480 (upholding preliminary injunction requiring prison officials to release inmate from medical keeplock when inmate was allowed out of cell only ten minutes per week for period of over three-and-a-half years); *Allen v. Sakai,* 48 F.3d 1082, 1086–88 (9th Cir.1994) (finding that inmate confined to segregated unit demonstrated denial of basic human need when he was allowed only 45 minutes of outdoor exercise per week for period of six weeks and segregation was indefinite), *cert. denied,* 514 U.S. 1065, 115 S.Ct. 1695, 131 L.Ed.2d 559 (1995); *Mitchell,* 954 F.2d at 192 (holding that reasonable prison official should have known that depriving inmate of out-of-cell exercise for periods of seven months and eleven months would violate Eighth Amendment); *Toussaint v. Yockey,* 722 F.2d 1490, 1492–93 (9th Cir.1984) (upholding preliminary injunction requiring outdoor exercise when many inmate class members had been confined to their cells for 23 and a half hours a day for period of over one year); *Spain v. Procunier,* 600 F.2d 189, 199–200 (9th Cir. 1979) (holding that Eighth Amendment violated as to segregated inmates who were generally deprived of outdoor exercise for more than four years), *and Rhem v. Malcolm,* 371 F.Supp. 594, 627 (S.D.N.Y.) (holding that policy of allowing pretrial detainees only a "50 minute per week opportunity for exercise . . . (even supplemented by other recreational programs) does not meet constitutional standards"), *aff'd* 507 F.2d 333 (2d Cir.1974), *with May,* 109 F.3d at 565 (holding that Eighth Amendment was not violated when inmate was denied outdoor exercise for 21 days); *Wishon v. Gammon,* 978 F.2d 446, 448–49 (8th Cir.1992) (holding that Eighth Amendment was not violated when inmate in protective segregation was allowed 45 minutes of out-of-cell exercise per week); *Peterkin v. Jeffes,* 855 F.2d 1021, 1031 (3rd Cir. 1988) (holding that Eighth Amendment was not violated by policy of allowing death row inmates two hours of outdoor exercise per day); *Green v. Ferrell,* 801 F.2d 765, 771–72 (5th Cir.1986) (holding that Eighth Amendment was not violated when average pre-trial detainee was deprived of exercise for 10 days and average felon was deprived of exercise for 75 days); *Leonard v. Norris,* 797 F.2d 683, 685 (8th Cir.1986) (holding that Eighth Amendment was not violated by policy denying inmates out-of-cell exercise for first fifteen days of punitive confinement); *Caldwell v. Miller,* 790 F.2d 589, 600 (7th Cir.1986) (holding that Eighth Amendment was not violated when inmate was confined to cell for 24 hours a day for first month following inmate uprising, allowed one hour of daily indoor exercise for next six months, allowed one hour per week of outdoor exercise in addition to daily indoor exercise for next month, and allowed two hours of outdoor exercise per week in addition to between five and seven hours of indoor exercise per week thereafter); *Anderson,* 757 F.2d at 35 (holding that Eighth Amendment was not violated when inmates confined to special housing units were allowed one hour of outdoor exercise per day); *Arce v. Walker,* 907 F.Supp. 658, 662–63 (W.D.N.Y.1995) (holding that Eighth Amendment was not violated when inmate in administrative confinement was deprived of out-of-cell exercise for eighteen out of nineteen days); *Young v. Scully,* Nos. 91 Civ. 4332, 91 Civ. 4801, 91 Civ. 6768, 91 Civ. 6769, 1993 WL 88144, at *5 (S.D.N.Y. March 22, 1993) (holding that Eighth Amendment was not violated when inmate was deprived of exercise for periods lasting several days), *and Jordan v. Arnold,* 408 F.Supp. 869, 876–77 (M.D.Pa.1976) (holding that Eighth

Amendment was not violated when inmates confined to special housing unit were allowed two hours of exercise per week).

■ A court faced with the task of determining whether a particular exercise deprivation falls below the objective requirements of the Eighth Amendment should consider all of the relevant facts, including: (1) the duration of the deprivation, *see May,* 109 F.3d at 565 ("[A] temporary denial of outdoor exercise with no medical effects is not a substantial deprivation."); *Rodgers v. Jabe,* 43 F.3d 1082, 1088 (6th Cir.1995) (noting that deprivation lasted only six and a half months); *LeMaire v. Maass,* 12 F.3d 1444, 1457 (9th Cir.1993) ("[O]rdinarily, the lack of outside exercise for *extended periods* is a sufficiently serious deprivation and thus meets the requisite harm necessary to satisfy [the Eighth Amendment's] objective test." (emphasis added)); *Wishon,* 978 F.2d at 449; *Mitchell,* 954 F.2d at 191 ("It may generally be considered that complete deprivation of exercise for an *extended period of time* violates Eighth Amendment prohibitions against cruel and unusual punishment." (emphasis added)); (2) the extent of the deprivation—whether the deprivation was partial or complete, *see Mitchell,* 954 F.2d at 192 (noting that the deprivation was complete); (3) the availability of other out-of-cell activities, *see Wishon,* 978 F.2d at 449; *Rodgers,* 43 F.3d at 1086 (citing *Patterson v. Mintzes,* 717 F.2d 284, 289 (6th Cir.1983)); *Green,* 801 F.2d at 771 (citing *Ruiz v. Estelle,* 679 F.2d 1115, 1152 (5th Cir.1982), *cert. denied,* 460 U.S. 1042, 103 S.Ct. 1438, 75 L.Ed.2d 795 (1983)); (4) the opportunity for in-cell exercise, *see Wishon,* 978 F.2d at 449; *Green,* 801 F.2d at 771 (citing *Ruiz,* 679 F.2d at 1152); and (5) the justification for the deprivation,[3] *see Mitchell,* 954 F.2d at 192 ("[P]enological considerations may, in certain circumstances, justify restrictions."); *Leonard,* 797 F.2d at 685 (noting that prison authorities must have "tools available as sanctions" to ensure compliance with prison rules and regulations); *Patterson,* 717 F.2d at 289.

\* \* \* \* \* \*

Throughout the relevant periods, plaintiff insisted that he was entitled to one hour of outdoor exercise per day. The question whether he was entitled to that amount of exercise under state law is not now before the Court. The Court's concern is whether the amount of exercise afforded plaintiff was so deficient as to fall below contemporary standards of decency. Although the Court of Appeals for the Second Circuit has held that one hour of outdoor exercise per day comports with the requirements of the Eighth Amendment, *see Anderson,* 757 F.2d at 35, it did not adopt that amount as a constitutional minimum. Indeed, no court has adopted any such constitutional minimum. Turning to the particular facts of these cases, the Court must conclude that plaintiff has failed to satisfy the objective component of the Eight Amendment test.

## A. Civil Action 81 Civ. 5657

■ This case presents the question whether prison officials violate the Eighth Amendment's prohibition against cruel and unusual punishment by affording an inmate less than one hour a day of outdoor exercise for many days over a thirty day period. The Court finds that based on the undisputed facts of this case, the Eighth Amendment was not violated because the deprivation was of limited duration and was only a partial deprivation. Moreover, plaintiff was allowed to participate in out-of-cell activities other than outdoor yard, and plaintiff had some ability to engage in in-cell exercise. Finally, the deprivation was imposed as a sanction to encourage compliance with prison rules.

Plaintiff was not deprived of exercise for a substantial period of time. His outdoor yard privileges were suspended for thirty days, a deprivation much shorter than those in prior cases granting relief. *Cf. Jolly,* 76 F.3d at 480 (three and a half years); *Toussaint,* 722

---

**3.** This factor is also relevant to the subjective element of the Eighth Amendment analysis— whether the defendant prison officials imposed the conditions with deliberate indifference. *See LeMaire,* 12 F.3d at 1458 (holding that "[t]he decision by prison officials to curtail LeMaire's outside exercise privileges does not reflect 'deliberate indifference'" because the sanction was "directly linked to [plaintiff's] own misconduct").

F.2d at 1492–93 (over one year); *Spain*, 600 F.2d at 199–200 (over four years). If, in fact, he had been deprived of all outdoor exercise for thirty days, this case would present a closer constitutional question. However, plaintiff was afforded some outdoor exercise during the thirty day suspension of privileges.

The thirty day suspension began on or about July 2, 1981. Plaintiff was in keeplock from on or about July 2 until sometime on or about July 6. Plaintiff concedes that he attended morning yard for at least 39 minutes on July 5 and at least 40 minutes on July 6. In his July 5 grievance, plaintiff indicated that he had been receiving approximately 39 minutes of outdoor exercise virtually every day since he had been in keeplock. He had been in keeplock since the beginning of the thirty day period. Furthermore, by his own account, plaintiff attended evening yard between approximately July 3 and July 10. Evening yard lasted approximately three hours. As of July 10, there had been no substantial period of deprivation.

From on or about July 10 until sometime on or about July 17, plaintiff was in keeplock again. In his July 14 grievance, plaintiff indicated that he often received between 30 and 40 minutes of outdoor exercise when he was in keeplock. Plaintiff concedes that on July 28, he received at least 43 minutes of outdoor exercise. On or about August 2, 1981, plaintiff's yard privileges were restored. Based on these facts, plaintiff was denied all outdoor exercise for no longer than fourteen days in a row—from July 14 through July 27.[4] Courts have concluded that deprivations of this length do not impli-

cate Eighth Amendment concerns. *See May*, 109 F.3d at 565 (21 days); *Green*, 801 F.2d at 771 (up to 75 days); *Leonard*, 797 F.2d at 685 (15 days); *Arce*, 907 F.Supp. at 662–63 (18 out of 19 days).

In addition to receiving outdoor exercise during these thirty days, plaintiff was allowed to participate in daily out-of-cell activities on the twelve days that he was not in keeplock. He was allowed out of his cell to attend religious services, to dine in the mess hall three times per day, to receive visitors, to study in the library, to attend on-facility and off-facility medical appointments, to attend grievance interviews, to file grievances, to speak to counselors, and to walk to various places within the prison.

Moreover, based on the size of plaintiff's cell, the Court observes that he could have engaged in some minimal in-cell exercise, including push-ups, sit-ups, step-ups and running in place. However, because neither side has presented evidence regarding the opportunity for in-cell exercise, other than the size of plaintiff's cell and pictures of his cell, this factor does not weigh heavily in the Court's analysis. Finally, the deprivation was imposed to help ensure compliance with prison regulations. Plaintiff was not randomly deprived of outdoor exercise. His privileges were suspended because plaintiff allegedly refused to follow a corrections officer's order. However, because plaintiff's alleged infraction was not severe, this factor also weighs slightly in the Court's analysis.[5] In sum, the temporary and sporadic deprivations of outdoor exercise in this case do not fall below the minimum standards of the Eighth Amendment.[6]

---

4. As stated before, plaintiff filed no contemporaneous complaints alleging a complete denial of outdoor exercise on any day that he was in keeplock. Therefore, it is highly unlikely that he was denied exercise for fourteen days in a row because he was in keeplock for approximately eight out of those fourteen days, and thus entitled to an hour of outdoor exercise on each of those eight days. Plaintiff has never alleged that he was denied exercise on any of these fourteen days. He has only generally alleged that on some days when he was in keeplock, he was denied exercise completely. Although it is unlikely that plaintiff received no exercise during this fourteen day period, the Court must resolve all ambiguities in plaintiff's favor.

5. Indeed, the Court would reach the same conclusion regardless of these latter two factors.

6. Plaintiff argues that the law of the case doctrine should preclude the Court from granting defendants' motion for summary judgment. In 1982, when this case was before the Honorable Charles E. Stewart, Jr., the Court denied defendants' motion for judgment on the pleadings, or in the alternative, for summary judgment writing, in a two page memorandum decision, that "as thirty days is more than a trivial length of time to be deprived of exercise, plaintiff's papers do state a claim for which relief may be granted and judgment on the pleadings is inappropriate." *Davidson v. Coughlin*, No. 81 Civ. 5657 (S.D.N.Y.

## B. Civil Action 83 Civ. 2404

 Plaintiff's factual allegations in this case are so vague that he has failed to present sufficient evidence to support an essential element of his claim—that he suffered an unquestioned and serious deprivation of basic human needs. Plaintiff does not claim that he was deprived of all outdoor exercise during the relevant period. Nor does he claim that he was deprived of outdoor exercise for an entire day or days within the relevant period. Nor does he contend that he received less than one hour per day of outdoor exercise during the relevant period. Instead, he claims that his daily outdoor yard periods were often cut short and occasionally denied altogether. During the relevant period, outdoor yard was offered between two and three times per day. The alleged "burn" campaign by defendants to deprive plaintiff of full outdoor exercise periods lasted for approximately four and a half months.[7]

Drawing all reasonable inferences in favor of plaintiff, the undisputed facts show that he was often allowed less than a full hour of outdoor exercise during each of the three outdoor yard periods, and that on some occasions, he was not allowed out of his cell at all for morning yard. The extent of this alleged deprivation is so minimal that Eighth Amendment concerns are not implicated. *Cf. May*, 109 F.3d at 565 (holding that Eighth Amendment was not violated when inmate was denied all outdoor exercise for 21 days);

*Wishon*, 978 F.2d at 448–49 (holding that Eighth Amendment was not violated when inmate was allowed only 45 minutes of out-of-cell exercise per week); *Green*, 801 F.2d at 771–72 (holding that Eighth Amendment was not violated when average felon was deprived of all outdoor exercise for 75 days); *Leonard*, 797 F.2d at 685 (holding that Eighth Amendment was not violated by policy denying inmates out-of-cell exercise for first fifteen days of punitive confinement); *Anderson*, 757 F.2d at 35 (holding that Eighth Amendment was not violated when inmates confined to special housing units were allowed one hour of outdoor exercise per day); *Arce*, 907 F.Supp. at 662–63 (holding that Eighth Amendment was not violated when inmate was deprived of all out-of-cell exercise for eighteen out of nineteen days); *Young*, 1993 WL 88144, at *5 (holding that Eighth Amendment was not violated when inmate was deprived of exercise for periods lasting several days); *Jordan*, 408 F.Supp. at 876–77 (holding that Eighth Amendment was not violated when inmates confined to special housing unit were allowed only two hours of exercise per week). Plaintiff was afforded more than the amount of exercise required by the Eighth Amendment during the four-and-a-half-month period. Moreover, plaintiff was allowed to participate in many out-of-cell activities other than outdoor yard, including gym and Fay Field activities. Finally, as the Court stated above regarding civil action 81 Civ. 5657, plaintiff had the opportunity to

---

Dec. 9, 1982). Since that decision, the case has been reassigned, discovery has proceeded and almost fifteen years have passed.

Because the law of the case doctrine is discretionary, the Court is free to modify its prior ruling. *See Sagendorf–Teal v. County of Rensselaer*, 100 F.3d 270, 277 (2d Cir.1996) ("Application of the 'law of the case' doctrine is 'discretionary and does not limit a court's power to reconsider its own decisions prior to final judgment.'" (quoting *DiLaura v. Power Auth.*, 982 F.2d 73, 76 (2d Cir.1992))); *see Corporacion de Mercadeo Agricola v. Mellon Bank Int'l*, 608 F.2d 43, 48 (2d Cir.1979) (holding that successor trial judge has the power to modify or change ruling by first judge). More importantly, the issue decided by Judge Stewart—whether a complaint alleging a thirty day deprivation of exercise states a claim for relief—is not the same as the issue now before the Court—whether prison officials

violate the Eighth Amendment by affording an inmate less than one hour a day of outdoor exercise for many days over a thirty day period. The latter issue has never been decided by the Court. Accordingly, the law of the case doctrine does not preclude the Court from granting defendants' motion for summary judgment. *Cf. Sagendorf–Teal*, 100 F.3d at 277 (holding that District Court not constrained by law of the case doctrine when "the trial that intervened between the District Court's denial of summary judgment to (defendants) and its subsequent grant of their motion to dismiss provided new evidence about their lack of involvement").

7. According to plaintiff, "burn is prison slang, prison jargon to deprive an inmate of a right or a privilege unlawfully illegally against directives of the Department of Correctional Services and without a proper sanction in place." Grosz Aff. Ex. N at 80.

engage in limited in-cell exercise.[8]

## III. QUALIFIED IMMUNITY

■■■■ At the very least, the defendants in these cases are entitled to qualified immunity. Government officials are immune from suits for civil damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982); *accord Williams v. Greifinger,* 97 F.3d 699, 703 (2d Cir.1996). A district court should grant summary judgment on a claim of qualified immunity if:

> the asserted rights were not clearly established, or if the evidence is such that, even when it is viewed in the light most favorable to the plaintiffs and with all permissible inferences drawn in their favor, no rational jury could fail to conclude that it was objectively reasonable for the defendants to believe that they were acting in a fashion that did not violate a clearly established right.

*Davidson v. Scully,* 114 F.3d 12, 14 (2d Cir. 1997)[9] (quoting *In re State Police Litig.,* 88 F.3d 111, 123 (2d Cir.1996)). The issue of qualified immunity thus presents two questions—whether a defendant's conduct violated a plaintiff's clearly established rights; and whether it was objectively reasonable for the defendant to believe that his conduct did not violate those rights. *See Gardiner v. Incorporated Village,* 50 F.3d 151, 156 (2d Cir. 1995).

■■■■ In order for a right to be clearly established, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987); *accord Williams,* 97 F.3d at 703. Although "[a] court need not have passed on the identical course of conduct in order for its illegality to be 'clearly established' ..., 'in the light of pre-existing law the unlawfulness must be apparent.'" *Williams,* 97 F.3d at 703 (quoting *Anderson,* 483 U.S. at 640, 107 S.Ct. at 3039). In deciding whether a right was clearly established, a court should consider:

> (1) whether the right in question was defined with "reasonable specificity," (2) whether the decisional law of the Supreme Court and the applicable circuit court support the existence of the right in question, and (3) whether under preexisting law a reasonable defendant official would have understood that his or her acts were unlawful.

*Brown v. City of Oneonta, New York, Police Dep't,* 106 F.3d 1125, 1131 (2d Cir.1997) (quoting *Jermosen v. Smith,* 945 F.2d 547, 550 (2d Cir.1991), *cert. denied,* 503 U.S. 962, 112 S.Ct. 1565, 118 L.Ed.2d 211 (1992)) (internal quotation marks omitted); *accord Shechter v. Comptroller of New York,* 79 F.3d 265, 271 (2d Cir.1996); *Frank v. Relin,* 1 F.3d 1317, 1328 (2d Cir.), *cert. denied,* 510 U.S. 1012, 114 S.Ct. 604, 126 L.Ed.2d 569 (1993).

■■■■ Even if the scope of the right was clearly established at the time of the alleged violation, a defendant is entitled to qualified immunity if he can show that it was objectively reasonable to believe that his actions were lawful. *See Williams,* 97 F.3d at 703 (citing *Salim v. Proulx,* 93 F.3d 86, 89 (2d Cir.1996); *Genas v. New York Dep't of Correctional Servs.,* 75 F.3d 825, 830 (2d Cir. 1996); *Lennon v. Miller,* 66 F.3d 416, 420 (2d

---

8. The justification for the alleged deprivation is in dispute. Plaintiff contends that the deprivation was the result of an invidious "burn" campaign against him. Defendants, however, contend that plaintiff would opt not to participate in outdoor yard, and then later falsely accuse officers of improperly depriving him of yard privileges. *See* Grosz Aff. Ex. W at 35–36 ("[A]t times [plaintiff] would tell the officers he did not want to go to the recreation yard. And when I would be making my rounds, he would tell me that he was not let out of his cell. This would happen on more than one occasion with [plaintiff]."). Even taking plaintiff's contention as true, defendants would still be entitled to summary judgment because the alleged deprivation was *de minimis.* Therefore, this disputed issue of fact is not material, and summary judgment is appropriate.

9. That case involved the same plaintiff as the present cases. Plaintiff is "an extremely litigious inmate" who once "had at least 30 simultaneously pending suits." *Davidson v. Flynn,* 32 F.3d 27, 31 (2d Cir.1994).

Cir.1995)); *Frank,* 1 F.3d at 1328. Although this is a fact intensive inquiry, summary judgment may still be appropriate on this ground. *See Lennon,* 66 F.3d at 420; *Frank,* 1 F.3d at 1328. The defendant satisfies the test of objective reasonableness when " 'officers of reasonable competence could disagree' on the legality of the defendant's actions." *Lennon,* 66 F.3d at 420 (quoting *Malley v. Briggs,* 475 U.S. 335, 341, 106 S.Ct. 1092, 1096, 89 L.Ed.2d 271 (1986)).

At the time of the violations alleged in these cases, the Court of Appeals for the Second Circuit had only vaguely outlined the Eighth Amendment right to exercise. Plaintiff cites *Rhem v. Malcolm,* 371 F.Supp. 594, 627 (S.D.N.Y.1974), and *Frazier v. Ward,* 426 F.Supp. 1354, 1369 (N.D.N.Y.1977), in support of his position that the Eighth Amendment right to exercise was clearly established at the time of the alleged constitutional violations. As stated above, the relevant law for determining whether a right is clearly established is the decisional law of the Supreme Court and the applicable circuit court. Although not noted by plaintiff, *Rhem's* holding was affirmed by the Court of Appeals in *Rhem v. Malcolm,* 507 F.2d 333, 339 (2d Cir.1974). Accordingly, that case is relevant to the question of qualified immunity. In contrast, *Frazier,* which was not reviewed by the Court of Appeals, is irrelevant to the question of qualified immunity. *See Williams,* 97 F.3d at 706 ("[T]he germane law in determining whether a right is clearly established for purposes of qualified immunity is 'the decisional law of the Supreme Court and the applicable circuit court.' " (quoting *Ying Jing Gan v. City of New York,* 996 F.2d 522, 532 (2d Cir.1993) (quoting *Jermosen,* 945 F.2d at 550))). The only other relevant case decided by the Court of Appeals is *Sostre v. McGinnis,* 442 F.2d 178 (2d Cir.1971) (in banc).

In *Rhem,* a class of pretrial detainees argued that the conditions of their confinement violated their due process, equal protection and Eighth Amendment rights. They contended that the overall prison environment, their visitation rights, their opportunities for exercise and recreation, the number of security guards, and other conditions were consti-

tutionally deficient. The District Court sustained their challenge and held, in part, that "[t]he 50 minute per week opportunity for exercise ... does not meet constitutional standards." *Rhem,* 371 F.Supp. at 627.

The Second Circuit affirmed the District Court's findings of fact and conclusions of law, but noted that because it doubted whether the Eighth Amendment applied to pretrial detainees, it would adopt the approach of the District Court—that "a detainee is entitled to protection from cruel and unusual punishment as a matter of due process and, where relevant, equal protection." *Rhem,* 507 F.2d at 337. The Court of Appeals applied a heightened standard in evaluating the challenged prison conditions because the plaintiff class members were only pretrial detainees, who retained the presumption of innocence. The Court noted that "because the rights of detainees rather than of convicted defendants are involved, the district judge did not have to decide whether conditions at the Tombs were so bad as to be 'cruel and unusual punishment' even for convicted felons." *Id.* at 338. Thus, *Rhem* established that pretrial detainees are entitled to more than 50 minutes of outdoor exercise per week, but did not extend its specific holding to convicted felons like plaintiff.

In *Sostre,* an inmate challenged the conditions of his segregated confinement on many grounds, including "his diet, his opportunity for exercise, the hygienic conditions of his cell, and the possibility for intellectual stimulation." *Sostre,* 442 F.2d at 186. The Court rejected his Eighth Amendment claim, stating that "[i]n arriving at this conclusion, we have considered Sostre's diet, the availability in his cell of at least rudimentary implements of personal hygiene, the opportunity for exercise and for participation in group therapy, the provision of at least some general reading matter from the prison library and of unlimited numbers of law books, and the constant possibility of communication with other segregated prisoners." *Id.* at 193–94. However, the Court noted in a footnote that the opportunity for exercise "distinguishes the instant case from *Krist v. Smith,* 309 F.Supp. 497, 501 (S.D.Ga.1970), where the

court found no constitutionally acceptable justification for denying segregated prisoners a chance to exercise." *Id.* at 194 n. 25.

The Second Circuit has recently opined regarding *Sostre*'s implications on the question of qualified immunity, *see Williams,* 97 F.3d at 703–705, so this Court does not write on a clean slate. At the very least, *Sostre* "established that the availability of exercise is a key ingredient of a court's analysis whether an inmate's conditions of confinement pass muster under the Eighth Amendment." *Id.* at 704. The *Williams* Court did not reach the "question whether *Sostre* took the further step of deciding that the Eighth Amendment actually requires that prisoners receive some opportunity for exercise (although the above-quoted footnote strongly suggests that it did), because [the Court of Appeals] ha[d] since settled that question" in *Anderson v. Coughlin,* 757 F.2d 33 (2d Cir. 1985). *Id.* Because *Anderson* postdates the alleged violations in these cases, this Court must reach the question the *Williams* Court declined to reach—whether *Sostre* established an Eighth Amendment right to exercise. Based on the dicta in *Williams* regarding the footnote in *Sostre,* this Court must conclude that *Sostre* established that inmates are entitled to at least some opportunity for exercise.

To the extent that *Rhem* and *Sostre* established a limited right to exercise, qualified immunity nonetheless shields these defendants from liability because the contours of that right were so nebulous that a reasonable defendant would not have understood that his actions were unlawful. The above-cited cases did little to foreshadow what amount of exercise is required by the Constitution. *Rhem* only held that pretrial detainees are entitled to more than 50 minutes of outdoor exercise per week. *Sostre,* which notably *rejected* the plaintiff's challenge, only established that inmates are entitled to some amount of outdoor exercise. Neither case intimated whether a convicted felon may be deprived of outdoor exercise for a limited period of time as a disciplinary sanction or whether a convicted felon is entitled to daily outdoor exercise periods lasting longer than one hour. Because the pre-existing caselaw

only suggested that inmates must be afforded some opportunity for exercise, and plaintiff was allowed to exercise during the events alleged in both civil action 81 Civ. 5657 and civil actions 83 Civ. 2404, no reasonable officer would have understood that his actions were unlawful.

The *Williams* case does not compel a different result. In that case, prison officials had established a policy under which inmates who refused to submit to testing for tuberculosis were placed in a status called "medical keeplock." *Williams,* 97 F.3d at 701. Inmates in medical keeplock were only permitted out of their cells once a week for a ten-minute shower. An inmate would remain in medical keeplock until he agreed to submit to testing. Thus, the confinement was potentially indefinite. The plaintiff in that case was confined to his cell for 589 consecutive days before he agreed to submit to testing. On those facts, the Court of Appeals held that the defendant was not entitled to summary judgment on his claim of qualified immunity.

The Court of Appeals determined that in 1991, the time of the violation alleged in *Williams,* it was clearly established that inmates were entitled to some opportunity for exercise. *See id.* at 703–706 (considering the implications of *Sostre,* 442 F.2d 178 and *Anderson,* 757 F.2d 33 on the question of qualified immunity). Accordingly, it was apparent that depriving an inmate of all exercise for over a year and a half was unlawful. In the present cases, the right to exercise had not been so clearly established at the time of the alleged violations because *Anderson* had not yet been decided. More importantly unlike *Williams,* neither of the cases at bar involve a complete and prolonged deprivation of exercise. As discussed above, plaintiff was only deprived of outdoor exercise for a short period of time in civil action 81 Civ. 5667. In civil action 83 Civ. 2404, plaintiff was allowed to participate in multiple daily exercise periods, albeit periods lasting for less than one hour. Although it may have been apparent in 1991 that a complete deprivation of exercise for a substantial period of time violated the Eighth Amendment, it was not apparent in 1981 or in 1983

that limited and sporadic deprivations of exercise were unlawful. The contours of the right to exercise were not sufficiently clear that a reasonable official would have understood that what he was doing violated that right.[10] Accordingly, the defendants are entitled to summary judgment on their claim of qualified immunity.

### CONCLUSION

For the reasons stated above, defendants' motion for summary judgment is HEREBY GRANTED on the merits of plaintiff's Eighth Amendment claims in civil actions 81 Civ. 5657 and 83 Civ. 2404. Defendants' motion for summary judgment is also GRANTED on their claims of qualified immunity in civil actions 81 Civ. 5657 and 83 Civ. 2404. Because these rulings dispose of these actions, the Court will not reach the additional arguments raised by defendants in their moving papers.

**SO ORDERED.**

---

10. Even were the Court to hold otherwise, defendants would still be entitled to summary judgment, because, for the above stated reasons, "no rational jury could fail to conclude that it was objectively reasonable for the defendants to believe that they were acting in a fashion that did not violate a clearly established right." *In re State Police Litig.*, 88 F.3d at 123.