**Russell Ernest BOYD and David Roberts, Plaintiffs,**

v.

**Rondel ANDERSON, Edward Cohn, Barry Nothstine, Thomas P. Steepro, Edward Buss, Vince Forestieri, Gerald Daniels, John Barnes, James Cadwell, Robert Roose, Howard Wilson, Kimbula D. Frierson, Patricia Mundt, Larry Shadley, Steve Hough, Emerson Mccoy, George Payne, Doug Ayres, Gus Carlson, Dale Monroe, Linda Steele, William H. Hartley, Mcarthur Fortney, James Wynn, Joelyn Mick, Charles Penfold, Charles E. Whelan, and Ronda Vega, Defendants.**

**No. 3:01–CV–0440 AS.**

United States District Court, N.D. Indiana, South Bend Division.

May 9, 2003.

954

Russell Ernest Boyd, Michigan City, IN, pro se.

David James Roberts, Pendleton, IN, pro se.

David A. Arthur, Indiana Attorney General, Indianapolis, IN, for defendants.

## MEMORANDUM AND ORDER

ALLEN SHARP, District Judge.

Russell Boyd and David Roberts filed a complaint in the LaPorte Superior Court, alleging that Indiana Department of Correction ("IDOC") officials violated their federally protected rights while they were confined at the Indiana State Prison ("ISP"). They also allege that the defendants violated rights protected by Indiana's constitution and statutes and by IDOC policy. The defendants removed the case to this court pursuant to 28 U.S.C. § 1441(b). At the time the complaint was removed, it was not screened pursuant to 28 U.S.C. § 1915A.

Pursuant to § 1915A(a), "(t)he court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity." This court screens prisoner complaints brought in this court before they are filed. But even after a complaint is filed, 28 U.S.C. § 1915(e)(2)(B)(ii) requires the court to *sua sponte* dismiss a prisoner suit at any time if the court determines that it is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. Because this complaint has already been filed, this court will review it pursuant to § 1915(e)(2)(B)(ii).

A claim may be dismissed only if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. Allegations of a pro se complaint are held to less stringent standards than formal pleadings drafted by lawyers.

Accordingly, pro se complaints are liberally construed.

In order to state a cause of action under 42 U.S.C. § 1983, the Supreme Court requires only two elements: First, the plaintiff must allege that some person has deprived him of a federal right. Second, he must allege that the person who has deprived him of the right acted under color of state law. These elements may be put forth in a short and plain statement of the claim showing that the pleader is entitled to relief. FED.R.CIV.P. 8(a)(2). In reviewing the complaint on a motion to dismiss, no more is required from plaintiff's allegations of intent than what would satisfy Rule 8's notice pleading minimum and Rule 9(b)'s requirement that motive and intent be pleaded generally.

*Alvarado v. Litscher*, 267 F.3d 648, 651 (7th Cir.2001) (citations, quotation marks and ellipsis omitted).

This complaint is one hundred and three typed pages in length and contains four hundred and nine rhetorical paragraphs. The plaintiffs also attach sixty-three exhibits to the complaint, and some of these documents are quite lengthy. This complaint is one of the longest *pro se* prisoner complaints ever filed in this court, and the plaintiffs did an excellent job in drafting their complaint.

Because the plaintiffs allege that state officials violated rights protected by the United States Constitution, this court construes their complaint as bringing an action pursuant to 42 U.S.C. § 1983. Section 1983 provides a cause of action to redress the violation of federally secured rights by a person acting under color of state law. *Bell v. City of Milwaukee*, 746 F.2d 1205 (7th Cir.1984). To state a claim under § 1983, a plaintiff must allege violation of rights secured by the Constitution and laws of the United States, and must show that a person acting under color of

state law committed the alleged deprivation. *West v. Atkins*, 487 U.S. 42, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988). The first inquiry in every § 1983 case is whether the plaintiff has been deprived of a right secured by the Constitution or laws of the United States. *Baker v. McCollan*, 443 U.S. 137, 140, 99 S.Ct. 2689, 2692, 61 L.Ed.2d 433 (1979).

## I. INJUNCTIVE RELIEF CLAIMS

■ In the portion of their complaint, entitled "Declaratory Relief" (paragraphs 203 through 277), and in the section entitled "Injunctive Relief" (paragraphs 278 through 314), the plaintiffs seek extensive injunctive and declaratory relief based on the United States Constitution and on Indiana constitutional and statutory provisions. The Eleventh Amendment, however, precludes this court from entertaining the plaintiffs' request to interpret Indiana's constitution and statutes.

"A federal court's grant of relief against state officials on the basis of state law ... does not vindicate the supreme authority of federal law. On the contrary, it is difficult to think of a greater intrusion on state sovereignty than when a federal court instructs state officials on how to conform their conduct to state law. Such a result conflicts directly with the principles of federalism that underlie the Eleventh Amendment." *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 106, 104 S.Ct. 900, 911, 79 L.Ed.2d 67 (1984). The court will dismiss the plaintiffs' state law claims for injunctive and declaratory relief without prejudice to their right to refile those claims in state court.

## II. STATE LAW DAMAGE CLAIMS

Because the plaintiffs filed this complaint in state court asserting both federal and state law claims, this court will treat

their state law damage claims as supplemental claims pursuant to 28 U.S.C. § 1367. Under section 1367, which codified the pendent jurisdiction doctrine, federal courts, unless otherwise provided by statute, "have supplemental jurisdiction over all other claims that are so related to claims in the action ... that they form part of the same case or controversy."

■ Where this court dismisses a federal law claim brought by the plaintiffs, it will also dismiss state law claims that are supplemental to that particular federal claim, without prejudice to the plaintiffs' right to refile the supplemental claim in state court. This court will retain jurisdiction over the state law claims that are supplemental to federal claims it finds to state a claim upon which relief can be granted, and will allow the plaintiffs to pursue these supplemental state law claims to the extent that they have met the procedural prerequisites established by state statute to bring such claims against the defendants.

### III. DISCIPLINARY CHARGES AGAINST RUSSELL BOYD

Section IV of the complaint, entitled "Cause of Action," (paragraphs 35 through 108) presents the plaintiffs' legal claims. Section V of the complaint (paragraphs 109 through 202) states the facts on which the plaintiffs rely to support their legal claims.

Paragraphs 35 through 56 and paragraphs 65, 98, 99, and 101 deal with events arising from disciplinary charges filed by Correctional Officers Larry Shadley, Steve Hough, Emerson McCoy, and Gus Carlson against Mr. Boyd, charging him with possession of a security key. Mr. Boyd alleges that these defendants planted a key in his bed in retaliation for his having been among the inmate plaintiffs in *Lee v. DeBruyn*, 3:95cv370 RM. He asserts that they then searched his living area based on a bogus "snitch note," recovered the key,

and charged him with possession of escape paraphernalia. The conduct adjustment board ("CAB") found Mr. Boyd guilty, demoted him in good time earning class, took away earned good time credits, and placed him in disciplinary segregation.

Mr. Boyd appealed the board's finding of guilt through the IDOC's administrative appeals process described in *Markham v. Clark* 978 F.2d 993 (7th Cir.1992). Exhibit 19 establishes that Mr. Boyd was partially successful in his appeal. On August 4, 1999, ISP Superintendent Rondle Anderson reduced the charge against Mr. Boyd from possession of escape paraphernalia to any unauthorized possession, removal, or relocation of property, modified the segregation sentence to time served, restored Mr. Boyd to Credit Class I, and reduced the loss of credit time from one hundred and eighty days to ninety days.

In paragraphs 35 and 40 of the complaint, Mr. Boyd alleges that defendants Shadley, Hough, McCoy, and Carlson planted a key in his bed area. In Paragraphs 41, 42, 43, 45, and 46 of the complaint, he alleges that the members of the CAB, Vince Forestieri, Gerald Daniels, and John Barnes denied him procedural due process at the disciplinary hearing on this charge.

■ Indiana prisoners have a protected liberty interest in good-time credits and are therefore entitled to due process before the state revokes those credits. *Montgomery v. Anderson*, 262 F.3d 641, 645 (7th Cir.2001). The due process required in a prison disciplinary hearing where a prisoner loses good time credits is set forth *Wolff v. McDonnell*, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974) and *Superintendent, Mass. Correctional Institution v. Hill*, 472 U.S. 445, 105 S.Ct. 2768, 86 L.Ed.2d 356 (1985), and entails (1) advance written notice of the charges; (2) an opportunity, when consistent with institutional safety and correctional goals, to call

witnesses and present evidence; (3) a written statement by the fact finder of the evidence relied upon and the reasons for the decision; and (4) "some evidence" to support the decision. In some circumstances, a prisoner may also be entitled to a lay advocate. *Wolff v. McDonnell*, 418 U.S. at 571, 94 S.Ct. at 2982.

■ Section 1983 provides a cause of action to redress the violation of federally secured rights by a person acting under color of state law. *Bell v. City of Milwaukee*, 746 F.2d at 1232. "Habeas corpus is the exclusive remedy for a state prisoner who challenges the fact or duration of his confinement and seeks immediate or speedier release, even though such a claim may come within the literal terms of § 1983." *Heck v. Humphrey*, 512 U.S. 477, 481, 114 S.Ct. 2364, 2369, 129 L.Ed.2d 383 (1994), citing *Preiser v. Rodriguez*, 411 U.S. 475, 488–490, 93 S.Ct. 1827, 1835–1836, 36 L.Ed.2d 439 (1973). Because loss of earned credit time or demotion in credit time earning classification increases the length of a prisoner's confinement, habeas corpus is the appropriate remedy for a prisoner who has been deprived of good time credits or demoted in good time credit earning classification. *Harris v. Duckworth*, 909 F.2d 1057, 1058 (7th Cir.1990).

■ Mr. Boyd may only seek damages in this action. But his damage claims against the defendants for allegedly setting him up with a key, and for violating his due process rights in the disciplinary proceeding against him are barred at this point by *Heck v. Humphrey*, 512 U.S. at 486–87, 114 S.Ct. at 2372, which provides that if the remedy sought under § 1983 would require a finding or judgment that would have the effect of invalidating a conviction or sentence, the plaintiff must first "prove that the conviction was reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." The *Heck* doctrine applies to prison disciplinary hearings where the plaintiff lost good time credits or was demoted in credit time earning classification. *Edwards v. Balisok*, 520 U.S. 641, 117 S.Ct. 1584, 137 L.Ed.2d 906 (1997).

■ To award damages to Mr. Boyd on allegations that some defendants set him up for a disciplinary charge and that others violated his due process rights during the disciplinary hearing would require a finding that the disciplinary board's finding of guilt was invalid. Because the relief Mr. Boyd requests would render the disciplinary board's finding of guilt invalid, these portions of his § 1983 complaint are premature.[1]

---

1. The court notes that Mr. Boyd has submitted evidence that even some of the officers involved in finding the key were not convinced of his guilt. Defendant Larry Shadley, the Officer In Charge of the shift on which the key was discovered, affirmed in exhibit # 20 "that in [his] best professional opinion this was clearly a set-up." In exhibit # 21, defendant Steve Hough, the officer who found the key, states "it is very possible someone did set offender Boyd up" by planting the key in his bunk.

Were this court the original fact finder in Mr. Boyd's disciplinary hearing, it might have come to a different conclusion than did the disciplinary board. But federal courts do not sit to correct any injustice that may have occurred in state administrative proceedings, and a federal district court may not substitute its judgment for that of a prison disciplinary board. Even were this a habeas corpus petition in which this court could properly review this disciplinary proceeding, the court would be limited to determining whether Mr. Boyd was afforded the procedural protections mandated by *Wolff v. McDonnell* and whether there was sufficient evidence to support the board's finding. Once a prisoner has been granted the procedural protections outlined in *Wolff*, the role of a reviewing court "is limited to determining whether there was sufficient evidence to support the committee's

In paragraphs 35, 36, 98 and 99, Mr. Boyd alleges that the defendants planted the key in his bed and sent him to disciplinary segregation in retaliation for exercising his First Amendment right to petition the courts. In most circumstances, Mr. Boyd's allegations might well constitute a sufficient retaliation claim to survive dismissal at the pleadings stage under the standards established in *Mt. Healthy City School District v. Doyle,* 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977). But *Heck v. Humphrey* and *Edwards v. Balisok* preclude Mr. Boyd's retaliation claim at this time. If this court found that correctional officers retaliated against Mr. Boyd by planting evidence against him, it would mean that Mr. Boyd was innocent of the disciplinary charge arising from the finding of the key, which would invalidate the disciplinary board's finding of guilt. *Jackson–El v. Winsor,* 986 F.Supp. 440, 444 (E.D.Mich.1997) (A finding by a federal court that an officer planted a knife in a prisoner's room and falsified the misconduct ticket in retaliation for engaging in protected First Amendment activities "would necessarily imply the validity of the hearing officer's determination that plaintiff did in fact possess the knife").

In paragraph 101, Mr. Boyd alleges that the members of the disciplinary board, retaliated against him for pursuing *Lee v. DeBruyn* by imposing heavy disciplinary sanctions on him. The court will also dismiss this claim because *Heck v. Humphrey* provides that in order to recover damages for an allegedly unconstitutional conviction, "caused by actions whose unlawfulness would render a conviction *or sentence* invalid, a § 1983 plaintiff must prove" that the conviction or sentence has been reversed or set aside. *Heck v. Humphrey,*

512 U.S. at 486, 114 S.Ct. at 2372. (Emphasis added).

In paragraphs 37 and 38, Mr. Boyd alleges that Rondle Anderson, Doug Ayres, George Payne, and Joelyn Mick, placed him in prehearing segregation after officers found a key in his bed. He further alleges that they "refused to provide [him] with written notice" why he was being placed in prehearing segregation "as required by I.D.O.C. Disciplinary Code."

■ Placing a convicted felon in prehearing segregation without notice or other process does not violate the Fourteenth Amendment's due process clause. Prehearing segregation is a species of administrative segregation. At one time, *Hewitt v. Helms,* 459 U.S. 460, 103 S.Ct. 864, 74 L.Ed.2d 675 (1983), provided state prisoners a right to due process before being placed in administrative segregation if the state had established that administrative segregation would not occur absent a substantive predicate. But this holding of *Hewitt v. Helms* was abrogated by *Sandin v. Conner,* 515 U.S. 472, 484, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995). *Sandin* " 'shift[ed] the focus of the liberty interest inquiry' from 'the language of a particular regulation' to 'the nature of the deprivation.' " *Hatch v. District of Columbia,* 184 F.3d 846, 851 (D.C.Cir.1999), quoting *Sandin v. Conner,* 515 U.S. at 481, 115 S.Ct. at 2293.

■ Under *Sandin v. Conner,* a prisoner is entitled to due process before being segregated from general population only where the conditions imposed work an atypical and significant hardship on him in relation to the ordinary incidents of prison life or where the discipline imposed in-

decision." *McKinney v. Meese,* 831 F.2d 728, 733 (7th Cir.1987). A committee's determination of guilt is constitutionally valid if there is "any evidence in the record that could support the conclusion reached by the disciplinary board." *Superintendent, Mass. Correctional Institution v. Hill,* 472 U.S. at 455, 105 S.Ct. at 2774.

fringed on rights protected by the due process clause of its own force. Placing an inmate in disciplinary segregation, or in administrative segregation while disciplinary charges pend against him, does not directly implicate the due process clause, nor does it generally work an atypical and significant hardship on a prisoner in relation to the ordinary incidents of prison life. Transferring a prisoner from the general population to a segregation unit, including prehearing segregation, does "not present the type of atypical, significant deprivation in which a state might conceivably create a liberty interest," and is "within the expected parameters of the sentence imposed by a court of law." *Sandin v. Conner*, 515 U.S. at 485, 115 S.Ct. at 2301. That ISP officials may not have followed procedures set forth by departmental policy in the placing Mr. Boyd in prehearing segregation states no claim upon which relief can be granted. *Olim v. Wakinekona*, 461 U.S. 238, 250 n. 12, 103 S.Ct. 1741, at 1748, 75 L.Ed.2d 813 (1983); *Shango v. Jurich*, 681 F.2d 1091 (7th Cir.1982).

In paragraph 37, Mr. Boyd suggests that institutional investigator Doug Ayres never actually conducted any investigation into the charges against him after he was placed in prehearing segregation. Yet in paragraph 39, Mr. Boyd alleges that defendant Ayres violated his Fourteenth Amendment due process rights as well as rights protected by the state constitution during his investigation into the security key incident by ordering that Mr. Boyd's personal property be delivered to his office to be searched for contraband. Mr. Boyd alleges that some of his property, including legal materials from *Lee v. DeBruyn*, was seized, destroyed, or lost during this process.

▮▮▮ The Fourteenth Amendment's due process clause provides that the states shall not "deprive any person of life, liberty, or property, without due process of

law," but there is no loss of property without due process of law if a state provides an adequate postdeprivation remedy for the loss. *Parratt v. Taylor*, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981); *Hudson v. Palmer*, 468 U.S. 517, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984). The Indiana tort claims act provides a sufficient remedy for loss of personal property, including loss of legal materials, by the negligence or intentional actions of state officials. *Hossman v. Spradlin*, 812 F.2d 1019, 1023 (7th Cir.1987). Since Indiana provides an adequate remedy for the illegal deprivation of property by prison officials, the property loss alleged by Mr. Boyd states no claim upon which relief can be granted under § 1983.

In paragraphs 47, 48, 50, and 54 of the complaint, Mr. Boyd alleges that Superintendent Anderson and IDOC official Charles Penfold violated rights protected by the Fourteenth Amendment's due process clause in the administrative appeals process. He asserts that the rights these defendants violated are established by Indiana statutes and the IDOC policy governing administrative appeals.

▮▮▮ An administrative appeal is not one of the rights *Wolff v. McDonnell* establishes as guaranteed by the Fourteenth Amendment's due process clause. A state may choose to afford an administrative appeal in prison disciplinary actions, and Indiana has done so, but this does not mean that errors in the administrative appeals process violate a state prisoner's federally protected rights. Violations of due process rights guaranteed by state law or department of correction policy state no claim under § 1983. An expectation of receiving process without more is not a liberty interest protected by the Due Process Clause. *Olim v. Wakinekona*, 461 U.S. at 250 n. 12, 103 S.Ct. 1741, at 1748, 75 L.Ed.2d 813. Accordingly, the claims

raised in paragraphs 47, 48, and 54 state no claim upon which relief can be granted under § 1983.

The claim raised in paragraph 50, that altering the charge on appeal deprived Mr. Boyd of notice of the charge against him, arguably implicates one of the due process rights guaranteed by *Wolff v. McDonnell.* But even if *Heck v. Humphrey* does not bar this claim, the recent decision in *Northern v. Hanks,* 326 F.3d 909 (7th Cir. 2003), establishes that it states no claim upon which relief can be granted in Mr. Boyd's circumstances.

■ During the administrative appeal, Superintendent Anderson reduced the charge of possession of escape paraphernalia (a class "B" offense) to the charge of unauthorized possession, removal, or relocation of property (a class "C" offense). Mr. Boyd asserts that this action denied him "the opportunity to defend himself against said (new) charge by providing testimony and exculpatory evidence that would support [his] claim of innocence."

In *Northern v. Hanks,* the Seventh Circuit reviewed another Indiana inmate's complaint that a prison superintendent reduced his charge on appeal. Like Mr. Boyd, Northern asserted that reducing the charge denied him notice of the charge against him and the opportunity to defend against the lesser charge. Northern had admitted to investigators that he helped smuggle tobacco into the prison and was originally charged with conspiracy and bribery. Superintendent Hanks reduced the charges to attempted trafficking. The Seventh Circuit held that because the original report "gave Northern all the information he needed to defend against the trafficking charge, the reviewing authority's modification did not deprive Northern of his due process rights," *Northern v. Hanks,* 326 F.3d 909, 911, citing with approval *Holt v. Caspari,* 961 F.2d 1370, 1373 (8th Cir.1992) (holding that a prison disci-

plinary committee did not deny an inmate due process by elevating charge from "possession of contraband" to "possession of dangerous contraband" because the factual basis for both charges was the same).

The original disciplinary charge against Mr. Boyd was based on his alleged possession of a security key, and the conduct report notified him of this fact. Possession of the security key is also a factual basis for the charge of any unauthorized possession, removal, or relocation of property, so the initial report gave Mr. Boyd all the information he needed to defend against the charge of unauthorized possession, removal, or relocation of property.

In paragraph 49 of the complaint, Mr. Boyd alleges that prison officials denied him rights guaranteed by the Fourteenth Amendment's equal protection clause when they denied him "a fair and impartial Voice Stress Analysis Examination." The Fourteenth Amendment's due process clause does not guarantee that a prisoner charged with a disciplinary offense will receive a voice stress test, and the facts cited by Mr. Boyd state no equal protection claim upon which relief can be granted. In paragraph 114, Mr. Boyd states that he took two stress tests, that IDOC Regional Director Herb Newkirk ordered the second test because he found the results of the first test to be suspect, and that "a party outside the Indiana State Prison" conducted the second test.

■ At the time officers charged Mr. Boyd with possession of a security key, he lived in a dormitory. In paragraph 44 of the complaint, Mr. Boyd alleges that the disciplinary board denied him equal protection when they found him guilty of possession of escape paraphernalia based on the key being found in his "bed area (which is a common area), while finding prisoners similarly situated not guilty of similar charges and circumstances due to

the contraband being found in a common area." The equal protection clause, however, does not require a prison disciplinary committee to find an inmate not guilty of disciplinary charges if disciplinary boards had previously found other inmates not guilty of similar charges in similar circumstances.

 In paragraphs 51, 52, 53, 55, and 56 of the complaint, Mr. Boyd alleges that prison officials denied him equal protection under the laws by "refusing to place [him] back into the housing unit and work assignment that he enjoyed prior to having his ... disciplinary code violation reduced to a class 'C' violation." Prisoners have no constitutionally protected liberty or property interest in a particular prison job assignment, *Bulger v. U.S. Bureau of Prisons,* 65 F.3d 48, 49 (5th Cir.1995). That some other prisoners may have been placed back into their original housing and work assignments after their charges were reduced, states no Fourteenth Amendment equal protection claim.

## IV. DISCIPLINARY CHARGES AGAINST DAVID ROBERTS

Paragraphs 57 through 64 of the complaint deal with events arising from disciplinary charges against Mr. Roberts. The conduct report (exhibit 35) charged Mr. Roberts with attempting to intimidate a lay advocate into refusing to represent Mr. Boyd so as "to manipulate the CAB chairman into assigning a lay-advocate of his (Roberts) choice to represent" Mr. Boyd. According to the report of disciplinary hearing (exhibit 36), Mr. Roberts admitted attempting to obtain a lay advocate for Mr. Boyd, but denied attempting to intimidate anyone. Lay advocate Joseph Zurzolo submitted a statement that Mr. Roberts "became concerned that I was being placed in a dangerous and perhaps life threatening situation from other inmates. I believe he was merely trying to warn me

of the possible danger I could face in this situation." (Exhibit 40). The disciplinary board, however, found Mr. Roberts guilty and sentenced him to disciplinary segregation. The board did not deprive Mr. Roberts of earned credit time or demote him to a lower credit time earning classification.

In paragraph 57, Mr. Roberts alleges that ISP officials placed him in prehearing segregation without notice and that the defendants did not issue a conduct report or hold a disciplinary hearing "within the time limits as required by IDOC policy and Indiana law." In paragraph 58, he alleges that the defendants issued a conduct report twenty-two days after placing him in prehearing segregation "in violation of IDOC Policy and Indiana law."

 As noted in Section III of this memorandum, Mr. Roberts's allegation that the defendants placed him in segregation without notice states no § 1983 claim because placing a convicted prisoner in prehearing segregation does not directly implicate the due process clause, nor does it work an atypical and significant hardship on him in relation to the ordinary incidents of prison life. *Sandin v. Conner,* 515 U.S. 472 at 484, 115 S.Ct. at 2300, 132 L.Ed.2d 418. Moreover, even assuming that Mr. Roberts was entitled to the protections outlined in *Wolff v. McDonnell,* *Wolff* does not require that a charging instrument be prepared within a certain time period or that the disciplinary hearing be conducted within any specific time period. That the investigator may not have written a conduct report within the time limits set by IDOC policy and the hearing was not held within time limits established by departmental policy states no claim under § 1983. *Olim v. Wakinekona,* 461 U.S. at 250 n. 12, 103 S.Ct. at 1748.

In paragraphs 59, 60, 62, 63, and 64, Mr. Roberts alleges that he was denied due process during the disciplinary process. But *Wolff v. McDonnell* does not apply to this disciplinary action because Mr. Roberts lost no credit time and was not demoted to a lower credit time earning classification. *Sandin v. Conner,* 515 U.S. at 484, 115 S.Ct. at 2300, establishes that a prisoner is entitled to due process before being disciplined where good time credits are not involved only where the conditions imposed work an atypical and significant hardship on him in relation to the ordinary incidents of prison life or where the discipline imposed infringed on rights protected by the due process clause of its own force. Transferring a convicted prisoner from the general population to a segregation unit for the brief period of time Mr. Roberts was there does "not present the type of atypical, significant deprivation in which a state might conceivably create a liberty interest," and is "within the expected parameters of the sentence imposed by a court of law." *Id.,* 515 U.S. at 485–486, 115 S.Ct. at 2297.

In paragraph 61 of the complaint, Mr. Roberts alleges that the defendants brought this charge against him in retaliation for pursuing legal redress of grievances. Because Mr. Roberts did not lose good time credits, *Heck v. Humphrey and Edwards v. Balisok* have no application to this case. The court will deal with the claims raised in this paragraph in Section VII of this memorandum.

## V. CLAIMS ARISING FROM CONFINEMENT IN THE I CELLHOUSE DETENTION UNIT

After they were found guilty of misconduct, both plaintiffs were placed in the I Cellhouse Detention Unit ("IDU"). Mr. Boyd was on IDU for eighty-four days; Mr. Roberts was there for fifty-nine days. In paragraphs 65 and 66, the plaintiffs allege that the defendants conspired against them to place them on the IDU, and in paragraph 89, the plaintiffs allege that the defendants violated their rights by placing them in the IDU "in violation of I.D.O.C. policy, and thereby placed [their] health and well being in jeopardy." As previously noted in this memorandum, placing the plaintiffs in the IDU, even if it violated IDOC policy, states no claim under § 1983. The court will consider the plaintiff's allegations that conditions they were subjected to on the IDU violated their federally protected rights.

The plaintiffs allege that many conditions they experienced while in the IDU constituted cruel and unusual punishment. They also allege that the defendants deprived them of access to the law library and violated rights protected by the Fourteenth Amendment's equal protection clause while they were housed in the IDU.

### A. CONDITIONS OF CONFINEMENT CLAIMS

A violation of the Eighth Amendment's cruel and unusual punishments clause consists of two elements: (1) objectively, whether the injury is sufficiently serious to deprive the prisoner of the minimal civilized measure of life's necessities, and (2) subjectively, whether the prison official's actual state of mind was one of "deliberate indifference" to the deprivation. *Farmer v. Brennan,* 511 U.S. 825, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994); *Wilson v. Seiter,* 501 U.S. 294, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991).

Fed.R.Civ.P. 8 establishes a system of notice pleading, *Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 122 S.Ct. 992, 152 L.Ed.2d 1, (2002), and a complaint may not be dismissed at the pleadings stage "unless no relief could be granted 'under any set of facts that could be proved consistent with the allegations.'" *Nance v. Vieregge,*

147 F.3d 589, 590 (7th Cir.1998), *quoting Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984). Giving the plaintiffs the benefit of the inferences to which they are entitled at the pleadings stage, the court cannot say that they can prove no set of set of facts consistent with many of their conditions of confinement claims under the standards set forth in *Farmer v. Brennan* and *Wilson v. Seiter.*

■ Paragraph 69 of the complaint alleges that the cells in IDU are very small and that the plaintiffs were denied out of cell recreation. The Constitution requires that "some opportunity for exercise must be afforded to prisoners." *Anderson v. Coughlin,* 757 F.2d 33, 34 (2d Cir.1985). "Where movement is denied and muscles are allowed to atrophy, the health of the individual is threatened, and the state's constitutional obligation is compromised." *Stewart v. McGinnis,* 800 F.Supp. 604, 615 (N.D.Ill.1992) *aff'd,* 5 F.3d 1031 (7th Cir. 1993); *cert. denied,* 510 U.S. 1121, 114 S.Ct. 1075, 127 L.Ed.2d 393 (1994); *see also Davenport v. DeRobertis,* 844 F.2d 1310 (7th Cir.), *cert. denied* by *Lane v. Davenport,* 488 U.S. 908, 109 S.Ct. 260, 102 L.Ed.2d 248 (1988) (Seventh Circuit "not disposed to quarrel" with a determination that only one hour of out-of-cell exercise a week over a protracted period of time would fall below the minimum decencies required by the Eighth Amendment).

■ In paragraphs 70 and 73, the plaintiffs allege that the cells they inhabited were filthy and that they suffered from a total lack of sanitation and personal hygiene. "(I)nmates are entitled to reasonably adequate sanitation, personal hygiene, and laundry privileges, particularly over a lengthy period of time." *Martin v. Lane,* 766 F.Supp. 641, 648 (N.D.Ill.1991), quoting *Howard v. Adkison,* 887 F.2d 134, 137 (8th Cir.1989).

■ In paragraph 72 of the complaint, the plaintiffs allege that there was no functioning ventilation and air circulation system on the IDU. Prisoners must be provided with adequate ventilation. *Sanders v. Sheahan,* 198 F.3d 626, 628 (7th Cir. 1999), *citing Del Raine v. Williford,* 32 F.3d 1024, 1035 (7th Cir.1994).

■ In paragraph 79, the plaintiffs allege that the IDU had inadequate fire safety and smoke detection systems. The Eighth Amendment deliberate indifference standard applies to prison conditions affecting fire safety though not all unsafe conditions constitute punishment under the Eighth Amendment. *Standish v. Bommel,* 82 F.3d 190, 191 (8th Cir.1996). Giving the plaintiffs the benefit of the inferences to which they are entitled at the pleadings stage, the court cannot say that they can prove no set of set of facts consistent with this claim.

■ In paragraph 88, the plaintiffs allege unsanitary food service conditions on the IDU, and assert that the defendants regularly served food that was inedible because it was spoiled or contaminated. Prison officials must ensure that inmates receive adequate food, *Farmer v. Brennan,* 511 U.S. at 832, 114 S.Ct. at 1976, *citing Hudson v. Palmer,* 468 U.S. 517, 526–527, 104 S.Ct. 3194, 3200, 82 L.Ed.2d 393 (1984).

Several of the plaintiffs' conditions of confinement claims, however, state no claim upon which relief can be granted under § 1983. The court will dismiss the claims presented in paragraph 67, alleging that the defendants did not follow state law and IDOC policy by giving them the opportunity to exercise outside their assigned bed areas; paragraph 68, alleging denial of outdoor recreation contrary to state law and IDOC policy; paragraph 71, alleging that the plaintiffs were subjected to noise created by other inmates and an

exhaust fan; paragraph 82, alleging that Mr. Boyd was placed in a cell directly in front of a security light, contrary to Indiana law and IDOC policy; paragraph 83, alleging denial of direct sunlight, *see Richard v. Reed,* 49 F.Supp.2d 485 (E.D.Va.), *aff'd,* 188 F.3d 503 (4th Cir. 1999) (a prisoner's claim that jail officials deprived him of direct sunlight for more than 100 days did not state an Eighth Amendment claim); and paragraph 86, alleging the presence of mentally unstable inmates on the unit.

## B. EQUAL PROTECTION CLAIMS

In paragraphs 75, 76, 77, 78, 80, 81, 84, and 85 of their complaint, the plaintiffs allege that while they were housed in the IDU, prison officials denied them the same access to the law library and to the general library, access to religious services, access to visitation, access to telephone service, and access to educational and vocational programs that were "available to other prisoners who are similarly situated throughout the Indiana State Prison."

 The Fourteenth Amendment's equal protection clause directs that "all persons similarly situated should be treated alike." *Cleburne v. Cleburne Living Center,* 473 U.S. 432, 439, 105 S.Ct. 3249, 3254, 87 L.Ed.2d 313 (1985). But inmates confined in a disciplinary segregation unit are not similarly situated with general population inmates. The plaintiffs' claims that prison officials did not afford them the same access to various programs as that enjoyed by general population inmates throughout the prison states no valid equal protection claim.

## C. ACCESS TO THE LAW LIBRARY AND DELIVERY OF LEGAL MAIL

 In Paragraph 74 of their complaint, the plaintiffs assert that the defendants impaired their access to the law library while they were confined in the

IDU. Prisoners are entitled to meaningful access to the courts, *Bounds v. Smith,* 430 U.S. 817, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977), and denial of access to the law library may state a valid denial of access to the courts claim in some circumstances. The relevant inquiry is whether the inmate has been given a " 'reasonably adequate opportunity' to present his claim" *Martin v. Tyson,* 845 F.2d 1451, 1456 (7th Cir.), *cert. denied,* 488 U.S. 863, 109 S.Ct. 162, 102 L.Ed.2d 133 (1988), *citing Bounds v. Smith,* 430 U.S. at 825, 97 S.Ct. at 1496. To prevail in a denial of access to the courts claim, a prisoner must ultimately establish that the defendants' actions caused him actual injury. *Lewis v. Casey,* 518 U.S. 343, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996).

 In paragraph 166, the plaintiffs state the facts upon which they bottom the claim presented in paragraph 74. The plaintiffs state that they "were required to request legal cites and materials in writing from the law library which took approximately two (2) to three (3) weeks to be filled. That action was in clear violation of I.D.O.C. Policy and Procedures." To the extent the plaintiffs rely on the defendants' noncompliance with IDOC policy, they state no claim upon which relief can be granted. Moreover, they do not allege that a delay of two to three weeks in obtaining cites and materials from the law library caused them any actual injury or denied them a reasonably adequate opportunity to present their claims.

Fed.R.Civ.P. 8(a)(2) provides that a complaint need only present a short and plain statement of the claim showing that the pleader is entitled to relief. Although ambiguities in the complaint should be interpreted in the plaintiff's favor, *Canedy v. Boardman,* 16 F.3d 183, 188 (7th Cir.1994), the court need not strain to find inferences favorable to the plaintiff that are not ap-

parent on the face of the complaint, *Coates v. Illinois State Bd. of Educ.*, 559 F.2d 445, 447 (7th Cir.1977), or ignore factual allegations set forth in the complaint that undermine the plaintiff's claim. *City Nat'l Bank of Florida v. Checkers, Simon & Rosner*, 32 F.3d 277, 281 (7th Cir.1994). Nothing in the complaint suggests an inference that a two to three week delay in filling research requests states a claim upon which they are entitled to relief under any theory.

In paragraph 87 of their complaint, the plaintiffs allege that the defendants delayed delivery of legal mail. In Paragraph 175, they elaborate on this claim, stating that legal mail was not delivered until five to nine days after its postmark. The U.S. postal service would have taken part of this five to nine days to deliver the mail to the facility. Mail arriving at the ISP on Friday or Saturday normally would not be delivered until Monday. *See Owen v. Shuler*, 466 F.Supp. 5, 7 (N.D.Ind.1977), *aff'd*, 594 F.2d 867 (7th Cir.1979).

The plaintiffs describe this alleged delay in delivery of legal mail as an equal protection claim. But since they assert that the defendants treated all legal mail to inmates on IDU the same, they were treated the same as similarly situated inmates. To the extent the plaintiffs assert a substantive violation of their federally protected rights, they state no claim upon which relief can be granted. *Owen v. Shuler*, 466 F.Supp. at 7, *citing Procunier v. Martinez*, 416 U.S. 396, 94 S.Ct. 1800, 40 L.Ed.2d 224 (1974). (So long as delay in delivery of prisoners' mail is not unreasonable, it does not reach Constitutional dimensions).

## VI. CLAIMS ARISING FROM SEARCHES OF THE LIFERS' OFFICE AND LOSS OF PROPERTY

In paragraphs 92, and 95 of their complaint, the plaintiffs allege that prison officials violated their rights when they ordered correctional officers to search the Lifers' Organization Office. The plaintiffs were officers of the Lifers' Organization when these searches occurred. They allege that during the course of these searches, correctional officers destroyed office equipment and confiscated some of their personal property. In paragraph 93, the plaintiffs allege that defendants Carlson and Steel confiscated or destroyed documents pertaining to *Lee v. DeBruyn* that they had taken to the law library to be copied.

▪ The complaint in this case was filed in state court on April 30, 2001. Mr. Roberts signed the complaint on November 28, 2000, and Mr. Boyd signed it on December 30, 2000. The "mailbox" rule established in *Houston v. Lack*, 487 U.S. 266, 108 S.Ct. 2379, 101 L.Ed.2d 245 (1988), under which a prisoner's submissions to the court are to be deemed as "filed" on the date he delivers it to prison authorities for forwarding to the district court, applies to the initial filing of complaints with the court. *Cooper v. Brookshire*, 70 F.3d 377 (5th Cir.1995). At the screening stage, this court normally accepts the date a prisoner signs the complaint as the date he delivered it to prison officials for mailing. Giving the plaintiffs the benefit of every doubt, for the purposes of this memorandum, the court considers this complaint as having been "filed" on December 30, 2000, the date upon which the last plaintiff signed it.

▪ The search of the Lifer's office, described in paragraphs 92 and 183 occurred on June 1, 1998. The claim that materials were lost or destroyed in the law library, described in paragraphs 93 and 184 occurred on July 20, 1998. Because there is no federal statute of limitation for § 1983 actions, courts apply the most appropriate state statute of limitations. Section 1983 claims are considered as personal

injury claims for purposes of determining the applicable state statute of limitations. *Wilson v. Garcia,* 471 U.S. 261, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985). The Indiana statute of limitations applicable to § 1983 actions is the two-year period found in IND.CODE § 34–11–2–4. *Campbell v. Chappelow,* 95 F.3d 576, 580 (7th Cir.1996). The statute of limitations is an affirmative defense, but if a plaintiff "pleads facts that show his suit is time-barred or otherwise without merit, he has pleaded himself out of court." *Tregenza v. Great American Communications Co.,* 12 F.3d 717, 718 (7th Cir.1993), *cert. denied,* 511 U.S. 1085, 114 S.Ct. 1837, 128 L.Ed.2d 465 (1994). The claims presented in paragraphs 92 and 93 are barred by the statute of limitations.

The search of the Lifer's office described in paragraphs 95 and 187 of the complaint occurred within the statute of limitations. In paragraph 187, the plaintiffs note "that during the search, various items of property belonging to plaintiffs" were confiscated, and that they "were not provided with written notice as to the reason for said confiscation as required by Indiana Code 11–11–2–4(a)."

 That Indiana law may require state officials to notify inmates of confiscated property states no claim upon which relief can be granted under § 1983. Although the plaintiffs describe this as a First Amendment claim, it is more properly evaluated as Fourteenth Amendment due process claim. As noted in section III of this memorandum, there is no loss of property without due process of law if a state provides an adequate postdeprivation remedy for the loss. *Parratt v. Taylor,* 451 U.S. at 544, 101 S.Ct. at 1917. The Indiana tort claims act, provides a sufficient remedy for loss of personal property. *Hossman v. Spradlin,* 812 F.2d at 1023.

## VII. RETALIATION CLAIMS

 The plaintiffs' complaint presents several retaliation claims. Those claims the court has not already dealt with include paragraphs 61, 90, 91, 94, 96, 97, and 102 through 108 of the complaint. To support a retaliation claim, the plaintiffs must establish that they engaged in a constitutionally protected activity and that engaging in that activity was a substantial or motivating fact in the defendant's actions against them. *Mt. Healthy City School District v. Doyle,* 429 U.S. at 287, 97 S.Ct. at 576; *Brookins v. Kolb,* 990 F.2d 308, 315 (7th Cir.1993). There is a line of cases requiring a plaintiff to assert a chronology of events from which retaliation may plausibly be inferred. *Walker v. Thompson,* 288 F.3d 1005, 1008 (7th Cir.2002). But the Seventh Circuit has emphasized that these cases are not to be used to evaluate retaliation claims at the pleadings stage because it would "raise the specter of fact pleading now firmly interred by our recent decision in *Higgs v. Carver, supra,* at 439. After *Higgs,* there is no such pleading requirement." *Id.,* at 1009, citing *Higgs v. Carver,* 286 F.3d 437, 439 (7th Cir.2002). Giving the plaintiffs the benefit of the inferences to which they are entitled at the pleadings stage, the court cannot say that they can prove no set of set of facts consistent with their retaliation claims set forth in paragraphs 61, 90, 96, 97, and 102 through 108 under the standards set forth in *Mt. Healthy City School District v. Doyle.*

In paragraph 91, the plaintiffs allege that Barry Nothstine retaliated against them and harassed them over a photo shoot count letter. They elaborate on this claim in paragraph 182, in which they allege that on April 13, 1998, defendant Nothstine issued a conduct report against Mr. Roberts that was "retaliatory in nature." In paragraph 94, the plaintiffs as-

sert that defendants Nothstine and Carlson retaliated against them by threatening disciplinary action against them after they complained about loss or destruction of documents in *Lee v. DeBruyn,* and that the defendants denied a request to purchase a legal text to train inmates on post-conviction relief procedure. In paragraphs 185 and 186, the plaintiffs state that these events occurred in July and September of 1998. Even assuming that the defendants acted in retaliation for the plaintiffs having exercised a protected First Amendment right, Indiana's two year statute of limitation bars these claims. *Campbell v. Chappelow,* 95 F.3d at 580.

## VIII. DENIAL OF GROUP MEETING WITH A VISITING ATTORNEY

In paragraph 100 of their complaint, the plaintiffs allege that on June 4, 1999, defendant Carlson "deliberately blocked and/or interfered with Plaintiffs ... personal contact with legal counsel." In paragraph 194, they elaborate on this claim by asserting that on other occasions, the Lifers' Organization attorney in *Lee v. DeBruyn* met with the plaintiffs and another organization officer as a group. On June 4, 1999, however, defendant Carlson scheduled them as three separate visits.

 "[T]he opportunity to communicate privately with an attorney is an important part of [the] meaningful access" guaranteed by *Bounds v. Smith, Dreher v. Sielaff,* 636 F.2d 1141, 1143 (7th Cir.1980). The right to consult with an attorney survives incarceration following conviction, and an inmate's opportunity to confer with counsel is an important constitutional right that the courts will not permit to be unnecessarily abridged. *Id.* at 1146. Prison officials, however, have the authority to impose reasonable regulations and conditions regarding attorney visits, so long as they do not interfere with an inmate's communication with his attorney. *McCray v. Sullivan,* 509 F.2d 1332 (5th Cir.1975),

*cert. denied,* 423 U.S. 859, 96 S.Ct. 114, 46 L.Ed.2d 86 (1975).

 The facts stated in paragraph 194 establish that defendant Carlson did not prevent the plaintiffs from meeting with their attorney on June 4, 1999, so he did not interfere with their communication with their attorney. Prisoners have a right to meet with their attorney, but they do not have a right to meet as a group with an attorney. Defendant Carlson's scheduling of three individual visits instead of one group visit on this one occasion may have been less convenient, less efficient, and more costly, but it did not deny the plaintiffs access to their attorney or to the courts.

## IX. CONCLUSION

For the foregoing reasons, the court **DISMISSES,** pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii), the plaintiffs' requests for injunctive and declaratory relief based on Indiana's constitution or statutes and the claims presented in paragraphs 35, 36, 37, 38, 39, 40, 41, 42, 43, 44, 45, 46, 47, 48, 49, 50, 51, 52, 53, 54, 55, 56, 57, 58, 59, 60, 62, 63, 64, 65, 66, 67, 68, 71, 74, 75, 76, 77, 78, 80, 81, 82, 83, 84, 85, 86, 87, 89, 91, 92, 93, 94, 95, 98, 99, 100, and 101. The dismissal of the state law claims in these paragraphs, and the dismissal of the plaintiffs' claims for injunctive and declaratory relief based on state law, is without prejudice to the plaintiffs' right to refile the dismissed state law claims in state court.

**IT IS SO ORDERED.**